UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DANIEL E. GILL, THOMAS C. McDERMOTT,
and JAY T. HOLMES,

|  |  |
|---|---|
| Plaintiffs, | **COMPLAINT** |
| vs. | Civil Action No.: |

BAUSCH & LOMB SUPPLEMENTAL
RETIREMENT INCOME PLAN I,
BAUSCH & LOMB INCORPORATED,
and COMPENSATION COMMITTEE OF
THE BAUSCH & LOMB BOARD OF
DIRECTORS,

Defendants.

---

Plaintiffs, for their complaint in this action, allege as follows:

## NATURE OF THE ACTION

1.      This is an action under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"), by which plaintiffs, retired senior officers of Bausch & Lomb Incorporated ("B&L"), who have had vested rights to receive retirement benefits under B&L's Supplemental Retirement Income Plan I ("SERP I" or "the Plan") since 1988 or earlier, seek relief, including a judicial determination of their rights, because B&L improperly, and in violation of its fiduciary obligations and the terms of the Plan, reduced plaintiffs' vested retirement benefits, by making lump sum payments to plaintiffs that were substantially less than the benefits guaranteed by the Plan and declaring that its obligations under the Plan were then satisfied, and that plaintiffs were not entitled to receive any more benefits under the Plan.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this action pursuant to 29 U.S.C. §§ 1132(e)(1) and (f), and 28 U.S.C. § 1331.

3.      Venue in the Western District of New York is proper pursuant to 29 U.S.C. § 1132(e)(2) because (a) the Plan is administered in this district, (b) defendants' breach of the Plan took place in this district, and (c) defendant B&L resides in this district.

## THE PARTIES

4.      Plaintiff Daniel E. Gill ("Gill") was Chairman and Chief Executive Officer of B&L from 1982 to 1996.

5.      Plaintiff Thomas C. McDermott ("McDermott") was President and Chief Operating Officer of B&L from 1986 through 1993.

6.      Plaintiff Jay T. Holmes ("Holmes") was a senior executive of B&L from 1981 until he retired in 1997 as Executive Vice President and Chief Administrative Officer.

7.      Defendant SERP I is a pension plan within the meaning of 29 U.S.C. § 1002(2)(A).

8.      Defendant B&L is a corporation organized under the laws of the State of New York, with its principal place of business at One Bausch & Lomb Place, Rochester, New York.

9.      B&L is the sponsor of SERP I and the settlor of its associated trusts.

## PLAN ADMINISTRATOR

10.      An action for the wrongful reduction or denial of benefits may be brought against the plan and the plan administrator.

11.      Pursuant to 29 U.S.C. § 1002(16)(A)(ii), if no person is specifically identified in the plan as the plan administrator, the plan sponsor is the plan administrator.

12.     SERP I does not specifically identify a single individual or entity as the Plan administrator.

13.     Upon information and belief, B&L never prepared or furnished to plaintiffs a summary plan description respecting SERP I, or any material modifications of its terms, in violation of 29 U.S.C. §§ 1022 and 1024(b), and 29 C.F.R. § 2520.102-3..

14.     In the 2005 and 2006 SERP I Annual Reports filed with the Department of Labor, B&L identified itself as the Plan administrator of SERP I.

15.     B&L acted as the Plan administrator in that it interpreted the terms of SERP I and directed the actions of various B&L employees as to the adverse benefits decisions at issue in this action.

16.     B&L is the Plan administrator for SERP I because (a) no Plan administrator is expressly identified in SERP I or in a summary plan description regarding the Plan, (b) B&L is the SERP I sponsor, (c) B&L has identified itself in official Plan filings as the Plan administrator, and (d) B&L has acted as the Plan administrator as to the adverse benefits decisions at issue in this action.

17.     B&L is a fiduciary with respect to SERP I because it is the Plan administrator, and because it exercised discretionary authority and control respecting the management of SERP I and the disposition of its assets by, among other things, interpreting SERP I to require that lump sum payments be made to plaintiffs, by directing payment of those lump sums, and by terminating plaintiffs' right to future benefits under SERP I.

18.     In January 2008, B&L, through its Chairman and Chief Executive Officer at that time, Ronald L. Zarrella, advised plaintiff Holmes that defendant Compensation Committee of

the B&L Board of Directors ("the Compensation Committee") was authorized to interpret and resolve disputes under SERP I.

19.     Notwithstanding Mr. Zarrella's representation, SERP I does not identify the Compensation Committee as an entity authorized to interpret and resolve disputes under SERP I.

20.     Upon information and belief, neither B&L, the Compensation Committee, nor the B&L Board of Directors has ever amended the Plan or issued a summary plan description identifying the Compensation Committee as an entity authorized to interpret and resolve disputes under SERP I.

21.     In February 2008, B&L or the Compensation Committee created and issued "Bausch & Lomb Supplemental Retirement Income Plan I ERISA Section 503 Procedures" (the "Procedures") to govern the administration of benefits claims under SERP I.

22.     Upon information and belief, no claims procedures relating to SERP I were ever prepared or distributed before February 2008, in violation of 29 U.S.C. § 1133(2) and 29 C.F.R. § 2560.503-1.

23.     The Procedures identify the Compensation Committee as the Plan administrator.

24.     Since February 2008, B&L has maintained and represented to plaintiffs that the Compensation Committee is the Plan administrator and the entity responsible for considering appeals challenging the denial or reduction of benefits due under SERP I.

25.     Upon information and belief, the Compensation Committee has, together with B&L (collectively "the Plan Administrators"), acted as the Plan administrator for SERP I since February 2008.

26.     The Compensation Committee is a fiduciary under SERP I because it exercised discretionary authority in connection with plaintiffs' appeal of the adverse benefits determination made by B&L as to SERP I.

## FACTS

### Plaintiffs' SERP I Benefits

27.     Defendant B&L created SERP I in the 1980's as a means to attract and retain key senior officers, such as plaintiffs, in essential management positions.

28.     SERP I provides compensation to retired participants in the form of supplemental retirement income, to be paid over the remainder of their and their spouses' lives.

29.     The express purpose of SERP I is to "afford . . . key officers an incentive, in terms of economic security, which is comparable to that offered by other prospective employers who are or may be in the future competing for their services."

30.     SERP I requires the establishment and maintenance of a separate, irrevocable secular trust ("the Trust" or, together, "the Trusts") for the benefit of each vested Plan participant.

31.     SERP I further requires B&L to make periodic contributions to the Trusts, as necessary to fund the required benefits on an actuarially sound basis.

32.     The Trust assets are protected from B&L's creditors, even in the event of a bankruptcy or insolvency, and cannot be used by, or for the benefit of, B&L for any reason.

33.     Funds deposited into the Trusts revert to B&L only after all benefits due plaintiffs and their surviving spouses under SERP I have been paid.

34.     Plaintiffs' rights to receive benefits under SERP I have been vested since 1988 or earlier.

35.     SERP I provides that each plaintiff shall be paid an annual after tax benefit of up to 36% of his Final Average Compensation (as defined by SERP I), depending on his age on the date of termination of employment.

36.     Pursuant to SERP I, each Plaintiff shall be paid such annual after tax benefit, in equal monthly installments, for the remainder of his life.  Thereafter, each plaintiff's surviving spouse shall be paid 50% of such annual after tax benefit for the remainder of her life.

37.     To ensure that Plaintiffs receive the full benefits guaranteed by SERP I, the Plan requires that "the amounts payable under this Plan shall be grossed up (as necessary) to provide the specified after tax benefit . . . ."

38.     In January 1996, plaintiff Gill retired from B&L and began receiving the annual after tax benefit to which he was and is entitled, in equal monthly installments.

39.     In July 1993, plaintiff McDermott retired from B&L and began receiving the annual after tax benefit to which he was and is entitled, in equal monthly installments.

40.     In August 1997, plaintiff Holmes retired from B&L and began receiving the annual after tax benefit to which he was and is entitled, in equal monthly installments.

41.     Plaintiffs continued to receive their annual after tax benefits, in monthly installments, as required by SERP I through September 2007.

## The Warburg Acquisition

42.     On May 16, 2007, B&L announced that it had entered into a definitive agreement with Warburg Pincus, a global private equity firm, under which Warburg Pincus would acquire all of the outstanding shares of B&L common stock ("the Warburg Acquisition").

43.     In letters dated September 19, 2007, B&L advised plaintiffs that "in the event of a change of control" as a result of the Warburg Acquisition, their SERP I benefits would be

6

converted to a cash lump sum and paid within 15 days of a shareholder vote approving the transaction.

44.     The projected lump sum payments to plaintiffs referred to in such letters, which were made in early October 2007, were significantly less than the present value of the annual after tax benefits to which they were entitled under SERP I.

45.     B&L also advised plaintiffs in such letters that after the lump sum payments had been made, plaintiffs' participation in SERP I would cease, and they would receive no further benefits under the Plan.

46.     B&L's shareholders voted to approve the Warburg Acquisition on September 21, 2007.  On October 26, 2007, the Warburg Acquisition was completed, and B&L became a wholly-owned subsidiary of WP Prism Inc., a wholly-owned subsidiary of Warburg Pincus.

47.     On October 3, 2007, B&L directed Wells Fargo, the trustee of the Trusts ("the Trustee"), to discontinue all monthly payments due to plaintiffs under SERP I and to make a cash lump sum payment to each of them.

48.     None of the plaintiffs received the October 2007 installment of their annual after tax benefits.

49.     B&L's failure to pay the October 2007 monthly installments violated SERP I and ERISA.

**Plaintiffs' Claims for Benefits under the Plan**

50.     By letter dated October 5, 2007 to B&L, plaintiffs objected to the discontinuance of the monthly installment payments required by SERP I and to the payment of a reduced cash lump sum in lieu of the monthly payments.

51.     Plaintiffs requested that the monthly installments continue as required by SERP I, pending their receipt of a full accounting of the calculations and assumptions used to arrive at the proposed lump sum payments, and advised B&L that the express terms of SERP I required that the Plan and its associated Trusts must continue in effect and survive the anticipated change of control.

52.     Notwithstanding plaintiffs' objections, the proposed lump sum payments were deposited (via direct deposit) into plaintiffs' respective bank accounts on October 5, 2007. Plaintiffs received notice of these deposits several days later.

53.     On October 11, 2007, B&L, through its Senior Vice President and General Counsel, Robert Stiles, advised that it was reviewing plaintiffs' claims and that, after it had completed that review, it would contact plaintiffs "to set up a process for providing information" to them.

54.     On October 17, 2007, B&L again advised plaintiffs that it was reviewing their claims, and would "follow an appropriate process with continued input from outside advisors and provide further information" to them.

55.     On November 1, 2007, B&L advised plaintiffs for the first time that "[u]nder ERISA § 503, 29 U.S.C. § 1133, there is a mandatory claim review procedure governing this Plan."

56.     B&L did not provide plaintiffs with any "mandatory claim review procedure" at that time.

57.     Upon information and belief, no written claim review procedure existed for SERP I in November 2007.

8

58.     On November 1, 2007, B&L also advised plaintiffs that "[a]ll claims under the Plan must be addressed to the Committee on Management of the Board of Directors."

59.     Upon information and belief, as of November 2007, B&L's Board of Directors had no Committee on Management.

60.     B&L further advised plaintiffs that, as a result of the Warburg Acquisition, B&L was "establishing a new Board of Directors and its committees" and that "[w]hen that process is completed, a new Board Committee charged with the responsibilities of the Committee on Management under the Plan will be constituted and appointed."

61.     B&L advised plaintiffs that their claims should be directed to the new committee "[o]nce the Committee is formed," and instructed plaintiffs to copy the General Counsel, Mr. Stiles, "as the Company's representative," on all correspondence with the new committee.

62.     B&L did not advise plaintiffs when the new committee would be formed, or when their claims would be considered.

63.     On November 28, 2007, having received no further information about the "new Committee," plaintiffs, through their counsel, wrote Mr. Stiles and enclosed a letter, addressed to the Committee on Management, and any successor to it, setting forth their claims for benefits.

64.     On January 2, 2008, B&L's then Chairman and Chief Executive Officer, Ronald L. Zarrella, wrote Mr. Holmes that B&L and its "advisors" had "closely reviewed and revisited" the benefits decision it made, and that the matter "has been referred to the Compensation Committee of the Company's Board of Directors, which is authorized to interpret and resolve disputes under SERP I," and which "has engaged its own independent counsel."

65.     B&L to date has not provided Mr. Holmes or any of the other plaintiffs with any document describing the role of the Compensation Committee, the names of its members, or any contact information for the Compensation Committee.

66.     On January 7, 2008, B&L's counsel, Howard Sharpiro, of Proskauer Rose LLP, wrote to the B&L Compensation Committee and argued that the Compensation Committee should deny plaintiffs' claims for additional benefits due under the Plan.

67.     On January 15, 2008, plaintiffs, by counsel, wrote the Compensation Committee, in care of B&L's General Counsel, then Robert Bailey, in further support of their position that their benefits had been wrongfully reduced, and that that SERP I and its associated Trusts must remain in place to pay future benefits due under SERP I.

68.     On February 15, 2008, B&L responded through Mr. Shapiro, again arguing to its own board committee that plaintiffs' claims should be denied.

69.     On February 25, 2008, Jonathan M. Zorn, Esq., of Ropes & Gray LLP, on behalf of the Compensation Committee, first provided plaintiffs with a document entitled "Bausch & Lomb Supplemental Retirement Income Plan I ERISA Section 503 Procedures." That letter stated that the Procedures were "established under the Plan pursuant to Section 503 of [ERISA] for the consideration of claims with respect to asserted rights to Plan benefits."

70.     The Procedures are not dated, and had not previously been furnished to plaintiffs.

**Conflict of Interest**

71.     The Compensation Committee is a fiduciary under SERP I, but is not a legally distinct entity from B&L, the corporation of which its members are directors.

72.     B&L has had a direct financial interest in the benefits decisions relating to plaintiffs as to SERP I because (a) plaintiffs and their surviving spouses are the only

beneficiaries of SERP I, (b) B&L was and remains responsible to pay all promised benefits to plaintiffs and their surviving spouses pursuant to SERP I, and (c) any amounts remaining in the Trusts once all benefits have been paid pursuant to SERP I "shall be returned to the Company" under the terms of the Trusts.

73.     Upon information and belief, the Trusts for plaintiffs under SERP I together contained assets in excess of $4.5 million in market value as of the end of April 2008, all of which would revert to B&L immediately under its claimed interpretation of SERP I.

## Denial of Claims

74.     On April 14, 2008, Mr. Zorn, stating that he was acting on behalf of the Plan administrator, wrote a letter informing plaintiffs that "the Claims must be, and hereby are, denied." The letter, signed by Mr. Zorn, did not identify the Plan administrator by name, and itself purported to constitute the decision of the Plan administrator.

75.     By letter dated June 12, 2008, plaintiffs appealed the denial of their claims to the Compensation Committee as required by the Procedures created in February 2008.

76.     On July 15, 2008, Mr. Zorn, stating that he was acting on behalf of the Plan administrator, invited B&L to respond to the arguments plaintiffs raised in their appeal.

77.     On September 19, 2008, B&L's counsel, Mr. Shapiro, submitted a detailed position statement to the Compensation Committee, arguing that plaintiffs' appeal should be denied.

78.     On December 11, 2008 Mr. Zorn, stating that he was acting on behalf of the Compensation Committee, advised plaintiffs that "the Committee has determined that the Claim denial was proper, and that the Appeal should be and therefore is denied." That letter did not identify any member of the Compensation Committee or include or forward any documents

signed or purporting to be signed by the Compensation Committee, and the Zorn letter itself purported to constitute the decision of the Compensation Committee denying plaintiffs' appeal.

79.     Based on the foregoing, plaintiffs have exhausted any and all administrative remedies that they may have had under the Plan.

## CLAIM I

## (WRONGFUL REDUCTION OF PLAINTIFFS' BENEFITS)

80.     Plaintiffs repeat and reallege paragraphs 1 through 79 above as if fully set forth and repeated in this claim.

81.     Defendants wrongfully reduced and denied the annual after tax benefits to which plaintiffs are entitled under the terms of SERP I by (a) terminating monthly payments of plaintiffs' after tax benefits, (b) making lump sum payments to plaintiffs that were less than the present value equivalent of the annual after tax benefits guaranteed by the Plan, and (c) terminating plaintiffs' rights to participate in and receive future benefits under SERP I.

82.     The Plan Administrators' interpretation of SERP I so as to reduce plaintiffs' vested benefits under the Plan and terminate their rights to receive future payments directly benefited B&L because, under that interpretation, more than $4.5 million in Trust funds, which have been held by the Trustee in the Trusts for the sole benefit of plaintiffs, and which B&L has been prohibited from using or controlling, would revert to B&L and its parent company. Any such reversion would be in direct violation of defendants' obligations to plaintiffs under SERP I and the Trusts.

83.     Because the Plan Administrators would realize a significant financial advantage from a denial of plaintiffs' claims, the Plan Administrators had a blatant conflict of interest when

they made the adverse benefits determinations at issue in this action and when they denied plaintiffs' appeal.

84.     Upon information and belief, the Plan Administrators failed to exercise their fiduciary obligations solely for the benefit of the Plan and its participants and beneficiaries, and permitted their conflict of interest adversely to influence their interpretation of SERP I and their determination of plaintiffs' rights.

85.     The Plan Administrators' conduct prevented Plaintiffs from receiving the full benefits to which they are entitled under the terms of SERP I and deprived them of a reasonable opportunity for the full and fair review of their claims.

86.     As a direct and proximate result of the foregoing conduct, plaintiffs have suffered and will continue to suffer in the future damages in the form of reduced benefits under the Plan, and defendants have breached their obligations to pay benefits under SERP I and under ERISA.

87.     In accordance with 29 U.S.C. § 1132(a)(1)(B), plaintiffs are entitled to recover from defendants the benefits rightfully due them under SERP I, and to a declaration that (a) the termination of their annual after tax benefits (paid in monthly installments) and the payment of reduced lump sums wrongfully decreased their benefits under SERP I; (b) they are entitled to receive future benefits to the full level provided by SERP I; and (c) the Plan and its associated Trusts cannot be terminated until all such future benefits have been paid.

## CLAIM II

### (FAILURE TO PROVIDE RELEVANT DOCUMENTS)

88.     Plaintiffs repeat and reallege paragraphs 1 through 87 above as if fully set forth and repeated in this claim.

89.    Plaintiffs have, on numerous occasions since October 2007, requested in writing that the Plan Administrators produce documents and information relevant to their claims for benefits, including (a) all documents showing the calculations and assumptions used in making the cash lump sum payments to plaintiffs; (b) all communications with consultants and the Trustee relating to the determinations made concerning plaintiffs' rights and benefits under SERP I; (c) all documents on which the Plan administrator relied in making its benefits determinations; (d) all documents that were submitted, considered, or generated in the course of making such benefits determinations; and (e) all documents that demonstrate whether such benefits determinations were made in compliance with required administrative processes and safeguards.

90.    The Plan Administrators failed and refused to produce any of the requested information within 30 days of plaintiffs' written requests, as required by 29 U.S.C. § 1132(c)(1)(B) and 29 C.F.R. § 2560.503-1, and, as of the date this action was filed, still have not produced the majority of the requested information.

91.    The Plan Administrators' refusal to provide the documents and information as required by law has prejudiced plaintiffs and denied them their rights to a full and fair review of their claims for benefits.

92.    As a result of their failure to provide relevant documents and information within 30 days of plaintiffs' written requests, the Plan Administrators are personally liable in the amount of $110 per day to each of the plaintiffs from the date of such failure or refusal.

## PRAYER FOR RELIEF

WHEREFORE plaintiffs, Daniel E. Gill, Thomas C. McDermott, and Jay T. Holmes, request that the Court enter judgment as follows:

(a)     Against all defendants, for benefits due under the Plan, in an amount to be determined at trial;

(b)     Against all defendants, for a declaration that plaintiffs are entitled to receive all required future benefits under the Plan;

(c)     Against all defendants, for a declaration that the Plan cannot be terminated and that the Trusts must remain in effect and all Trust assets must remain in the trusts until plaintiffs have received all future benefits to which they are entitled;

(d)     Against defendants B&L and the Compensation Committee, for penalties of $110 per day per plaintiff, in accordance with 29 U.S.C. §§ 1132 (a)(1)(A) and 1132 (c)(1)(B), as a result of their failure to provide relevant information requested by plaintiffs;

(e)     Against all defendants, pursuant to 29 U.S.C. § 1132(g)(1), for an award of plaintiffs' reasonable attorneys' fees, and costs incurred in the prosecution of this action; and

(f)     For such other and further relief as the Court deems just and proper.

Dated: January 29, 2009

                    __s/Harold A. Kurland_____
                    Harold A. Kurland  (hak@wnhr.com)
                    Heidi S. Martinez  (hsm@wnhr.com)
                    WARD NORRIS HELLER & REIDY LLP
                    300 State Street
                    Rochester, New York 14614
                    (585) 454-0700
                    (585) 423-5910