UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DANIEL E. GILL, et al.,

      Plaintiffs,

   v.

BAUSCH & LOMB SUPPLEMENTAL
RETIREMENT INCOME PLAN I, et al.,

      Defendants.
_____

DECISION & ORDER

09-CV-6043CJS

## PRELIMINARY STATEMENT

By Order of Hon. Charles J. Siragusa, United States District Judge, dated September 30, 2009, all pretrial matters in the above-captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 27).

Plaintiffs Daniel Gill, Thomas McDermott and Jay Holmes have filed this action against defendants Bausch & Lomb Supplemental Retirement Income Plan I, Bausch & Lomb, Inc., and the Compensation Committee of the Bausch & Lomb Board of Directors, under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq*. ("ERISA").  (Docket # 1).  Plaintiffs, retired senior officers of Bausch & Lomb, Inc. ("B&L"), allege that defendants unlawfully reduced their vested benefits in B&L's Supplemental Retirement Income Plan I ("SERP I" or the "Plan") at the time B&L was acquired by another company.  Specifically, plaintiffs challenge B&L's issuance at that time of lump sum payments to each of them, which they contend were less than the present value of the benefits to which they were entitled.

On September 29, 2009, United States District Judge Charles Siragusa issued a decision granting in part and denying in part defendants' motion to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket # 24). Following the dismissal of Count Two, plaintiffs' sole remaining claim is one for wrongful reduction of benefits under 29 U.S.C. § 1132(a)(1)(B). (*Id*.). Judge Siragusa denied as premature defendants' motion to dismiss that claim, Count One, noting that further discovery was necessary. (*Id*. at 7). The parties now dispute the permissible scope of that discovery. (Docket ## 33, 36).

## FACTUAL BACKGROUND

### I. The SERP I Plan

In the 1980s, B&L created the SERP I pension plan in order to recruit and retain senior executives. (Docket # 1 at ¶¶ 27-29). The Plan required B&L to establish and maintain a separate, irrevocable trust for each participant and to fund each trust with periodic contributions. (*Id*. at ¶¶ 30-31). Under the Plan, each participant was to receive annual after-tax benefits of up to 36% of the participant's "Final Average Compensation" (as defined by the Plan) paid in equal monthly installments over the course of the participant's life. (*Id*. at ¶ 35). The Plan further provided that following a participant's death, his or her surviving spouse was to receive 50% of such benefits for life. (*Id*. at ¶ 36). Each trust agreement contained a provision authorizing the trustee to pay B&L any excess assets remaining in the trusts after final payment to the participants and their surviving spouses under the Plan. (*Id*. at ¶ 33; Docket # 37-5 at 69).

Plaintiffs are former B&L senior executives and were the only three participants in SERP I. Plaintiff Gill retired in 1996; plaintiff McDermott retired in 1993; and, plaintiff

Holmes retired in 1997. (Docket # 1 at ¶¶ 38-40). Following retirement, each plaintiff began receiving monthly benefits under SERP I.

In May 2007, B&L announced its agreement to sell its outstanding shares of common stock to Warburg Pincus, a global private equity firm. (*Id*. at ¶ 42). On September 19, 2007, B&L advised plaintiffs that shareholder approval of the Warburg acquisition would trigger the "change in control" provision in the Plan, pursuant to which their monthly payments would be converted into one-time lump sum payments and their rights in the Plan would be terminated. (*Id*. at ¶¶ 43, 45). On September 21, 2007, B&L's shareholders voted to approve the acquisition, and, on October 3, 2007, B&L directed the trustee to cease the monthly payments and to issue lump sum cash payments to each of the plaintiffs. (*Id*. at ¶¶ 46, 47). Despite plaintiffs' objections that the projected payments understated the present value of the benefits to which they were entitled, the proposed lump sum payments were deposited into each plaintiff's account on October 5, 2007. (*Id*. at ¶¶ 50, 52).

That same day, plaintiffs' attorney wrote to B&L objecting to the discontinuance of the monthly payments and contesting the amount of the lump sum payments. (*Id*. at ¶ 50). Plaintiffs further contended that the Plan explicitly provided for the trusts to survive any change in control of B&L. (*Id*. at ¶ 51). B&L responded that it was reviewing their claims and would contact them "to set up a process for providing information." (*Id*. at ¶ 53).

On November 1, 2007, B&L advised plaintiffs that in order to challenge the benefit payments, they were required to file a claim with the Board's Committee on Management. (*Id*. at ¶¶ 55, 58). B&L further advised that it intended to establish a new Board of Directors, which would appoint a new committee to assume the responsibilities of the Committee

on Management. (*Id*. at ¶ 60). Plaintiffs contend, however, that at the time of this communication, no Committee on Management or "written claim review procedure" in fact existed. (*Id*. at ¶¶ 56-57, 59).

On November 21, 2007, the Board appointed the Compensation Committee and vested it with responsibility for all determinations concerning SERP I. (Docket # 37-9 at 2-5). On November 28, 2007, plaintiffs wrote to the Board's "Committee on Management or Successor Committee" to contest the adequacy of the lump sum payments and to request that the Committee remedy the deficiency (the "November 28, 2007 Claim"). (Docket # 37-3 at 64-66; Docket # 1 at ¶ 63). On January 2, 2008, B&L's current Chairman and CEO advised plaintiff Holmes that B&L and its "advisors" had reviewed the benefits determination and had referred the matter to the Compensation Committee. (Docket # 1 at ¶ 64).

Following submissions to the Compensation Committee by counsel for plaintiffs and counsel for B&L, on April 14, 2008, plaintiffs were informed that their claims for benefits had been denied. (*Id*. at ¶ 74). The letter was signed by counsel for the Compensation Committee, who stated that he was acting on behalf of the Plan Administrator, although the letter did not expressly identify the Administrator. (*Id*.). The Compensation Committee subsequently denied plaintiffs' appeal of that decision on December 11, 2008. (*Id*. at ¶¶ 75-78).

## II. The Legal Claims

Plaintiffs filed the instant action on January 29, 2009, asserting two claims under ERISA: first, a claim that their benefits were wrongfully reduced and denied under 29 U.S.C. § 1132(a)(1)(B); and second, a claim for additional information and documents under 29 U.S.C.

§ 1132(c)(1)(B) . (Docket # 1). Plaintiffs' first claim alleges that (1) the lump sum payments were less than the present value of the benefits to which they were entitled and (2) the reversion provision created a conflict of interest for the Plan Administrator that adversely influenced the Administrator's determination of plaintiffs' benefits.[1] (*Id*. at ¶¶ 81-85). This claim is brought under 29 U.S.C. § 1132, which authorizes an ERISA plan participant to bring a civil action "to recover benefits due to him under the terms of [the] plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

Defendants moved to dismiss the Complaint on March 30, 2009. (Docket # 10). In support of their motion, defendants produced documents comprising what they contend to be the administrative record. Judge Siragusa determined that additional discovery beyond that record was warranted on two issues relevant to the wrongful benefits claim and declined to dismiss that claim. (Docket # 24 at 5-7).

First, Judge Siragusa found that the record before him was insufficient to determine the identity of the Administrator and that further discovery on the issue was justified. (*Id*. at 6-7). The second issue identified by Judge Siragusa is plaintiffs' conflict of interest allegation. (*Id*.). As to this issue, Judge Siragusa stated:

> Putting aside the question of the identity of the proper Plan Administrator for a moment, and assuming that the Plan vests the Plan Administrator with . . . discretion . . . , the Court is persuaded that Plaintiffs' allegations of a conflict of interest cannot be decided at this sta[g]e of the litigation. If the Plan Administrator was influenced by a conflict of interest . . . , then the Court must take that into account. However, the standard of review remains

---

[1] Plaintiffs' second claim was dismissed by Judge Siragusa. (Docket # 24 at 10).

> deferential. Only after discovery will the parties and, hence, the
> Court be able to ascertain who was the Plan Administrator and
> whether the Administrator's decision was an abuse of discretion.

(*Id*.) (internal citations omitted).

### III.  The Pending Motions

The parties exchanged Rule 26(a) initial disclosures on November 12, 2009, and plaintiffs served discovery requests on November 24, 2009. (Docket # 37 at 5). On December 1, 2009, defendants produced an additional sixty-five pages to supplement the administrative record. (*Id*.). Defendants contend that these additional documents "provide all the information possibl[y] relevant to demonstrate whether the B&L Board of Directors properly delegated the Compensation Committee with the full authority to administer the Plan." (*Id*.).

Plaintiffs filed the instant motion on March 15, 2010. (Docket # 33). Specifically, plaintiffs challenge defendants' decision to exclude from production and the administrative record any documents pre-dating the November 28, 2007 Claim. Plaintiffs argue that they are entitled to discovery during September and October 2007 because that was the period during which the decision to issue the lump sum payments was made. Specifically, plaintiffs seek discovery regarding, *inter alia*, the identity of the Plan Administrator who made that initial decision and the decision-making process itself, such as the identity of the persons involved in the decision, the substance of their communications and the documents upon which they relied.

Defendants argue that (1) the district court's review is limited to the administrative record and (2) the record is properly confined to documents generated upon the

plaintiffs' filing of the November 28, 2007 Claim. Defendants further contend that plaintiffs' requested discovery exceeds the scope of the limited discovery outlined by Judge Siragusa. For these reasons, defendants oppose plaintiffs' motion to compel and seek a protective order. (Docket # 36).

## DISCUSSION

### I. Scope of Discovery Under ERISA

The threshold requirement of discoverability under the Federal Rules of Civil Procedure is whether the information sought is "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). To be discoverable, the information "need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. The relevance standard, therefore, is commonly recognized as one that is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted). *See Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991) (parties entitled to discovery of any matter that appears "reasonably calculated to lead to the discovery of admissible evidence"); *Morse/Diesel, Inc. v. Fid. and Deposit Co. of Maryland*, 122 F.R.D. 447, 449 (S.D.N.Y. 1988) (term "reasonably calculated" in Rule 26(b)(1) means "any possibility that the information sought may be relevant [to a party's claim or defense]") (internal quotations omitted).

The district court's review of an ERISA claim for benefits is generally limited to the administrative record.[2] *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 125 (2d Cir. 2003); *Mitchell v. First Reliance Standard Life Ins. Co.*, 237 F.R.D. 50, 53 (S.D.N.Y. 2006). A court may exercise its discretion to consider evidence outside the administrative record, but generally only upon a showing of good cause to do so. *Muller v. First Unum Life Ins. Co.*, 341 F.3d at 125 (quoting *DeFelice v. Am. Int'l Life Assurance Co. of N.Y.*, 112 F.3d 61, 67 (2d Cir. 1997)). Good cause may be satisfied by a showing that the plan administrator had a conflict of interest that may have influenced the benefits determination, although "a conflict of interest does not *per se* constitute 'good cause.'" *Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 294 (2d Cir. 2004).

A party need not establish good cause, however, to obtain discovery beyond the administrative record. *Burgio v. Prudential Life Ins. Co. of Am.*, 253 F.R.D. 219, 229 (E.D.N.Y. 2008) ("the decision as to whether to allow discovery is distinct from the decision as to whether to allow consideration of additional evidence") (quoting *Allison v. Unum Life Ins. Co.*, 2005 WL 1457636, *11 (E.D.N.Y. 2005)); *Garg v. Winterthur Life*, 573 F. Supp. 2d 763, 771 (E.D.N.Y. 2008). Rather, the plaintiff "must show a reasonable chance that the requested discovery will satisfy the good cause requirement." *Burgio v. Prudential Life Ins. Co. of Am.*, 253 F.R.D. at 230

---

[2] The court's standard of review turns on the degree of discretion vested in the plan's administrator. On the one hand, if the benefit plan gives the administrator the discretion to determine benefit eligibility or to construe the plan's terms, "a district court must review the administrator's denial of benefits deferentially, and may reverse only if the administrator's decision was arbitrary and capricious." *Burgio v. Prudential Life Ins. Co. of Am.*, 253 F.R.D. 219, 228 (E.D.N.Y. 2008) (citing *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002)). *See Daniel v. Unumprovident Corp.*, 261 F. App'x 316, 317-18 (2d Cir. 2008). On the other hand, if the plan does not afford the administrator such discretion, the administrator's decision must be reviewed under a *de novo* standard of review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "[A] plan under which an administrator both evaluates and pays benefits claims creates the kind of conflict of interest that courts must take into account and weigh as a factor in determining whether there was an abuse of discretion, but does not make *de novo* review appropriate." *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 133 (2d Cir. 2008) (citing *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 111-12 (2008)).

(quoting *Trussel v. Cigna Life Ins. Co. of N.Y.*, 552 F. Supp. 2d 387, 390 (S.D.N.Y. 2008)). *See also Kagan v. Unum Provident*, 2009 WL 3486938, *1 (S.D.N.Y. 2009); *Mergel v. Prudential Life Ins. Co. of Am.*, 2009 WL 2849084, *2 (S.D.N.Y. 2009); *Garg v. Winterthur Life*, 573 F. Supp. 2d at 771. "The good cause standard required to obtain evidence beyond the administrative record [through discovery] is therefore less stringent than when requesting that the court [ ] consider such evidence in its final determination." *Burgio*, 253 F.R.D. at 230 (quoting *Trussel v. Cigna Life Ins. Co. of N.Y.*, 552 F. Supp. 2d at 390-91) (brackets in original). *See also id.* at 230-31 (collecting cases).

To justify discovery beyond the administrative record, a plaintiff must demonstrate that the requested discovery would assist in establishing the good cause necessary to expand the record on review, such as to explore whether the administrator was conflicted. *See e.g., id*. at 231 (permitting discovery outside the administrative record where plaintiff had asserted a conflict of interest); *Garg*, 573 F. Supp. 2d at 771 (permitting discovery outside administrative record where plaintiff had alleged a potential conflict based upon administrator's reliance on decision of another plan to deny plaintiff's benefits); *Lane v. Hartford*, 2006 WL 3292463, *2 (S.D.N.Y. 2006) (precluding discovery outside the administrative record where plaintiff alleged that additional discovery was needed, not to explore a conflict of interest, but only to determine whether she received "full and fair review"). Expanded discovery may also be permitted to test the adequacy of the administrative record. *Nagele v. Elec. Data Sys. Corp.*, 193 F.R.D. 94, 105 (W.D.N.Y. 2000).

## II. The Proper Scope of Discovery in this Case

Judge Siragusa has already determined that further discovery is warranted in this case on the issues of the identity of the Plan Administrator and whether the Administrator – whoever it is determined to have been – was influenced by a conflict of interest. The parties dispute whether plaintiffs' discovery requests fall within that articulated scope of discovery.

Defendants contend that their supplemental production of documents relating to the Board of Director's establishment of the Compensation Committee is sufficient to establish that the Compensation Committee was the Plan Administrator. On the issue of conflict of interest, defendants have represented that they do not oppose depositions of members of the Compensation Committee concerning the structural conflict that plaintiffs have alleged. Any other discovery, defendants maintain, would exceed the parameters of Judge Siragusa's decision and contravene well-established authority limiting discovery in ERISA cases.

For their part, plaintiffs contest that defendants' document production adequately identifies the Plan Administrator because the Compensation Committee – which was not established until November 2007 – was not the entity that decided to make lump sum payments to plaintiffs in October 2007. Plaintiffs seek discovery to determine who made that initial determination and whether that decision-maker was influenced by the structural conflict of interest created by the trusts' reversion provisions. For that reason, plaintiffs maintain that the administrative record in this case should be construed to include records from September and October 2007 when that determination was made; defendants urge that it should be confined to the Compensation Committee's denial of plaintiffs' November 28, 2007 Claim.

### A. The Identity of the Plan Administrator

On the question of the identity of the Plan Administrator, defendants have produced (1) the minutes of a meeting of B&L's Board held on November 21, 2007, during which the Compensation Committee was established and charged with authority "to make all determinations relating to all matters involving [the SERP I Plan]" (Docket # 37-9 at 3-4) and (2) documents identifying the members of the Committee (*id*. at 3-4, 9). According to defendants, these supplemental disclosures clearly identify the Plan Administrator and resolve the "discovery gap identified by Judge Siragusa." (Docket # 40 at 11).

While defendants' supplemental document production may resolve the question of the identity of the Plan Administrator when plaintiffs submitted the November 28, 2007 Claim, it does not address the identity of the Plan Administrator at the time of the earlier decision to make lump sum payments to plaintiffs. Defendants contend that the identity of the Plan Administrator at that earlier time is immaterial because the "adverse benefit determination" at issue in this case is the denial of plaintiffs' November 28, 2007 Claim, not the lump sum payments.

ERISA regulations define "adverse benefit determination" as a "denial, reduction, or termination of, or a failure to provide or make payment (in while or in part) for, a benefit." 29 U.S.C. § 2560.503-1(m)(4). Plaintiffs allege that the payments they received in October 2007 understated the present value of the benefits to which they were entitled. In other words, according to plaintiffs, defendants determined to, and did, pay them *reduced* benefits. Such an event falls within the meaning of "adverse benefit determination" as illuminated by the regulatory definition of that term.

The Eighth Circuit reached the same conclusion in *Price v. Xerox Corp.*, 445 F.3d 1054 (8th Cir. 2006). In that case, the parties disputed whether the plan administrator's decision to uphold its earlier termination of plaintiffs' disability benefits was an "adverse benefit determination" under ERISA. The Sixth Circuit held that it was not, concluding that "only the initial denial of benefits is an 'adverse benefit determination.'" *Id.* at 1056. *Accord Infantolino v. Joint Indus. Bd. of Elec. Indus.*, 2007 WL 879415, *5 (E.D.N.Y. 2007) ("adverse benefit determination" includes decision to terminate benefits whether or not employee affirmatively makes claim for benefits). *Cf. Maniscalco v. TAC Americas Comprehensive Healthcare Plan*, 325 F. Supp. 2d 383, 388 (S.D.N.Y. 2004) (email communicating claims administrator's denial of benefits constituted "adverse benefit determination" under plan's definition, which tracked regulatory definition).

Indeed, defendants' contention that the initial decision to issue lump sum payments should not be considered an "adverse benefit determination" causes a perverse result that cannot be what defendants genuinely intend. Procedures issued under the Plan at issue here required that "[a] claim relating to a benefit denial, denial of eligibility or other adverse benefit determination . . . must be received by the Administrator within sixty (60) days of the denial or other adverse determination." (Docket # 37-4 at 5). *Cf.* 29 C.F.R. § 2560.503-1(h)(2)(i) (plans must provide at least sixty days for claimants to appeal non-group health plan adverse benefit determinations). The procedures did not define the term "adverse benefit determination." (*Id.* at 4-5). Under defendants' construction, if the October 5, 2007 payment was not an "adverse benefit determination," then plaintiffs would be permitted to delay well beyond the sixty-day

period – perhaps as long as six years[3] – before filing a claim for benefits. Under those circumstances, defendants would have no basis for arguing that plaintiffs had failed to exhaust their administrative remedies because the sixty-day claim period would not have been triggered. *See Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 511 (2d Cir. 2002) (exhaustion of administrative remedies is a jurisdictional prerequisite to a federal ERISA claim).

        Accordingly, I direct defendants to respond to those discovery requests that relate to the issue of the identity of the Plan Administrator at the time the determination was made and implemented to make lump sum payments to plaintiffs.[4] Specifically, defendants shall respond by no later than **July 15, 2011** to Request Nos. 6, 12, 13, and 14 of Plaintiffs' Request for Production of Documents, and Interrogatory Nos. 1, 2 and 8. Document Request No. 13 shall be limited to the period 2007-2008.

        **B.  The Conflict of Interest Allegation**

        Defendants' cramped interpretation of "adverse benefit determination" also affects their interpretation of the scope of permissible discovery on the conflict of interest issue. Specifically, they maintain that Judge Siragusa's decision "permitted discovery only as to how that reversion clause affected the Compensation Committee's decision as to plaintiffs' November 28, 2007 claim for additional benefits." (Docket # 37 at 10). Defined that way, the issue may be

---

[3] At oral argument, defense counsel represented that absent a plan provision, the applicable statute of limitations for initial benefits claims under ERISA is the state period for breach of contract claims. Assuming *arguendo* that defendants are correct, the applicable statute of limitations in New York is six years. N.Y. C.P.L.R. § 213.

[4] This discovery is also relevant to the scope of the administrative record, which must be expanded to include documents pertaining to the initial adverse benefit determination.

most effectively explored through depositions of the Compensation Committee members, defendants further maintain. (Docket # 40 at 8). I disagree.

Judge Siragusa did not limit discovery – on the conflict of interest issue or otherwise – to the denial of the November 28, 2007 Claim. Indeed, Judge Siragusa expressly stated, "If the Plan Administrator was influenced by a conflict of interest, as is alleged here (Compl. ¶¶ 83-84), then the Court must take that into account. . . . Only after discovery will the parties and, hence, the Court be able to ascertain . . . whether the Administrator's decision was an abuse of discretion." (Docket # 24 at 7). Paragraph 84 of the Complaint, to which Judge Siragusa refers, alleges that the Plan Administrators' conflict of interest adversely "influenced their interpretation of SERP I." (Docket # 1 at ¶ 84). Paragraph 82 asserts that the challenged interpretation is the decision to reduce plaintiffs' benefits and terminate their rights in the Plan, thus permitting the remaining trust assets to revert to B&L. (*Id.* at ¶ 82).

In short, ERISA regulations, relevant caselaw and Judge Siragusa's decision make clear that the adverse benefit determination was the decision to pay lump sum – and, in plaintiffs' view, reduced – benefits to plaintiffs. Consistent with Judge Siragusa's decision, plaintiffs are entitled to discovery on the question whether the reversion provision adversely influenced that decision. To explore that issue adequately, plaintiffs are entitled to responses to the following discovery requests: Document Request Nos. 1, 2, 3 and 7 and Interrogatory Nos. 4 and 5.[5]

---

[5] Certain of these discovery requests are designed to explore whether the Plan Administrator deviated from established policies or procedures in making and calculating the lump sum payments and in determining plaintiffs' November 28, 2007 Claim. *See*, *e.g.*, Document Request Nos. 3, 5. Evidence of procedural deficiencies is relevant to the issue whether a structural conflict of interest in fact influenced a plan administrator's benefit determination. *See*, *e.g.*, *Lochner v. Unum Life Ins. Co.*, 389 F.3d at 294-95; *Garg*, 573 F. Supp. 2d at 771.

Defendants shall further respond to the following requests with the limitations noted:  Document Request No. 5 excluding drafts of summary plan descriptions; Request No. 8 limited to communications to and from the Plan Administrator or Administrators during the period 2007-2008 concerning the decision to make lump sum payments to plaintiffs, excluding communications with Ropes and Proskauer; Request Nos. 10 and 15 limited to the period 2007-2008; and, Interrogatory No. 6 limited to the decision to make lump sum payments to plaintiffs.  All responses shall be served by no later than **July 15, 2011**.

Defendants are not required to respond to Document Request Nos. 4, 9, 11 or 16 or Interrogatory Nos. 3 or 9.  Defendants' response to Interrogatory No. 7 is adequate.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to compel **(Docket # 33)** and defendants' motion for a protective order **(Docket # 36)** are **GRANTED in PART** and **DENIED in PART**.  Defendants shall respond as directed herein by no later than **July 15, 2011**.

**IT IS SO ORDERED.**

                                          *s/Marian W. Payson*
                                            MARIAN W. PAYSON
                                       United States Magistrate Judge

Dated:  Rochester, New York
        June   10   , 2011