# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| Daniel E. Gill, Thomas C. McDermott, and Jay T. Holmes, | : | Civil Action No. 09-CV-6043 CJS |
|  | : |  |
| Plaintiffs, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| Bausch & Lomb Supplemental Retirement Income Plan I, Bausch & Lomb Incorporated, and Compensation Committee of the Bausch & Lomb Board of Directors, | : |  |
|  | : |  |
| Defendants. | : |  |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

David Rothenberg
GEIGER AND ROTHENBERG, LLP
800 Times Square Building
45 Exchange Street
Rochester, New York  14614
(585) 232-1946

Howard Shapiro (*admitted pro hac vice*)
Nicole Eichberger (*admitted pro hac vice*)
PROSKAUER ROSE LLP
650 Poydras St., Suite 1800
New Orleans, Louisiana  70130
(504) 310-4088

*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND & PROCEDURAL HISTORY ........................................................................ 2

    I.  The Plan Document.............................................................................................................2

    II.  The Full and Fair Review of Plaintiffs' Claims................................................................5

        A.  The Lump Sum Payments.............................................................................................5

        B.  Administrative Exhaustion...........................................................................................6

    III. Procedural History Of The Litigation ..............................................................................7

STANDARD FOR SUMMARY JUDGMENT........................................................................... 8

ARGUMENT ........................................................................................................................... 8

    I.  As A Matter Of Law, The Compensation Committee's Determination Was Not An
        Abuse Of Discretion. ........................................................................................................8

        A.  As a matter of law, the Compensation Committee's decision is entitled to
           deferential review....................................................................................................9

        B.  As a matter of law, the alleged conflict of interest is entitled to little or no
           weight because it did not influence the Compensation Committee's decision............13

        C.  As a matter of law, the Compensation Committee provided Plaintiffs a full and
           fair review of their benefit claims under ERISA. .......................................................14

        D.  As a matter of law, the Compensation Committee's decision was not arbitrary
           and capricious. ........................................................................................................15

    II.  As a Matter of Law, The Plan Required Lump Sum Payments To Vested Participants. ..17

CONCLUSION...................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Ashenbaugh v. Crucible Inc.*,
854 F.2d 1516 (3d Cir. 1988).............................................................................12

*Bell Atl. Mobile of Rochester L.P. v. Town of Irondequoit, N.Y.*,
--- F. Supp. 2d ----, 2012 WL 289963 (W.D.N.Y. Jan. 31, 2012) ...........................8

*Bell v. Pfizer, Inc.*,
626 F.3d 66 (2d Cir. 2010)................................................................................11

*Conkright v. Frommert*,
130 S. Ct. 1640 (U.S. 2010)...........................................................................9, 13

*Durakovic v. Building Serv. 32 BJ Pension Fund*,
609 F.3d 133 (2d Cir. 2010)......................................................................9, 13, 14

*Fay v. Oxford Health Plan*,
287 F.3d 96 (2d Cir. 2002)................................................................................15

*Firestone Tire & Rubber Co. v. Bruch*,
489 U.S. 101 (1989)......................................................................................9, 13

*Fuller v. J.P. Morgan Chase & Co.*,
423 F.3d 104 (2d Cir. 2005)..............................................................................10

*Gummo v. Village of Depew*,
75 F.3d 98 (2d Cir. 1996)....................................................................................8

*Hobson v. Metropolitan Life Ins. Co.*,
574 F.3d 75 (2d Cir. 2009)................................................................................13

*Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*,
46 F.3d 1264 (2d Cir. 1995)..............................................................................10

*Kinek v. Paramount Communications, Inc.*,
22 F.3d 503 (2d Cir. 1994)............................................................................16, 17

*Leon v. Murphy*,
988 F.2d 303 (2d Cir. 1993)................................................................................8

*Lifson v. INA Life Ins. Co. of NY*,
333 F.3d 349 (2d Cir. 2003)..............................................................................17

*Lockheed Martin Corp. v. Retail Holdings, N.V.*,
639 F.3d 63 (2d Cir. 2011)................................................................................17

*Lyons v. Fairfax Properties, Inc.*,
   285 F. Supp. 2d 124 (D. Conn. 2003) .................................................................16

*Marrs v. Motorola, Inc.*,
   577 F.3d 783 (7th Cir. 2009) ......................................................................13, 14

*Metropolitan Life Ins. Co. v. Glenn*,
   554 U.S. 105 (2008)...........................................................................9, 13, 14

*Pagan v. NYNEX Pension Plan*,
   52 F.3d 438 (2d Cir. 1995)........................................................................10

*Perreca v. Gluck*,
   295 F.3d 215 (2d Cir. 2002)......................................................................16

*Schultz v. Aviall, Inc. Long Term Disability Plan*,
   670 F.3d 834 (7th Cir. 2012) ....................................................................17

## STATUTES

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et
   seq.* ................................................................................................... *passim*

29 U.S.C. § 1133, ERISA § 503 ................................................................11

29 C.F.R. § 2509.75-8.............................................................................11

29 C.F.R. § 2560.503-1(h) ......................................................................15

29 C.F.R. § 2560.503-1(h)(1) ..................................................................12

29 C.F.R. § 2560.503-1(h)(2) ..................................................................12

FED. R. CIV. P. 56(a) ................................................................................8

## PRELIMINARY STATEMENT

Plaintiffs, three former Bausch & Lomb Incorporated ("B+L") executives, filed this suit contesting the calculation and distribution of their supplemental retirement benefits as lump sums pursuant to Section 13 of the Bausch & Lomb Supplement Retirement Income Plan I (the "Plan" or "SERP I"). Plaintiffs brought this dispute after shareholder approval of the Warburg Pincus LLC Change in Control acquisition of B+L. Before the Change in Control, Plaintiffs received monthly grossed-up, after-tax benefits as vested SERP I Participants. Due to the acquisition, the Plan's Change in Control provision (Section 13) required the conversion of vested Participants' future benefits to tax-free lump sum amounts, calculated pursuant to the Plan's prescribed actuarial factors set forth therein.

It is undisputed that Plaintiffs are the sole vested Participants under the Plan, and that Section 13 required distribution of lump sum payments to vested Participants upon a Change in Control. It is also undisputed that the acquisition was a Change in Control event. Plaintiffs argue that Section 13 should not apply to them because they are Retired Participants rather than vested Participants only with respect to that provision. Plaintiffs' arguments are based on a tortured reading of these terms that causes anomalies and reductions in benefits when applied to the Plan as a whole. As a matter of law, their interpretation cannot stand.

The Committee administering the Plan determined that Section 13 applies to each Plaintiff, and that lump sums were properly calculated and distributed. The question for this Court is whether the Committee acted arbitrarily and capriciously in making that determination. As discussed further below, the undisputed facts show that is not the case. In fact, the Committee's determination was not only reasonable, it was compelled.

As a matter of law, the payment of lump sum benefits to Plaintiffs following the shareholder vote was required by reading the plain terms of the Plan as a whole. Although the

Committee's decision should be upheld under any standard of review, the Court should apply the arbitrary and capricious standard and find that the Committee's decision was not an abuse of discretion, thereby entitling Defendants to summary judgment.

**BACKGROUND & PROCEDURAL HISTORY**

**I.      The Plan Document**

SERP I is an executive deferred compensation plan created to provide supplemental retirement benefits to its vested Participants:  Daniel E. Gill, Thomas G. McDermott, and Jay T. Holmes (collectively "Plaintiffs").[1]  Dkt. #1, Cmpl., ¶27-28; *see also* Defendants' Local Rule 56 Statement of Material and Undisputed Facts ("SOF"), ¶¶1-3, filed herewith.  No other B+L employees participated in SERP I, and Plaintiffs admit that they were "the only **Participants** under SERP I."  Ex. 1, Responses and Objections to Plaintiffs' Requests for Admission, Request #11 (emphasis added); *see also* Ex. 2, Zaucha Depo. at 35:24-36:18; SOF, ¶3.[2]  As vested Participants, Plaintiffs received grossed-up, after tax benefits based on a percentage of final average compensation (including bonus amounts).  Dkt. #1, Cmpl., ¶¶35-37; Ex. 3, BL-AR 000022; SOF, ¶¶9-10.

The Plan named two administrators:  the Vice President of Human Resources and the Committee on Management.  Ex. 3, BL-AR 000023-24; SOF, ¶¶16-19.  The duties and level of responsibilities of these administrators were divided.  *See* Ex. 2, Zaucha Depo. at 58:14-59-9; SOF, ¶¶17-19.  The Vice President of Human Resources, and his assigns, performed the day-to-day administration of the Plan, *e.g.*, preparing participant communications and calculating benefits.  Ex. 2, Zaucha Depo. at 18:5-9, 30:13-24, 31:16-32:11, 63:11-24 & 67:6-69:13; Ex. 3,

---

[1]  The Plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq*. Dkt. 1, Cmpl., ¶27-28; SOF, ¶1.

[2]  Referenced documents are cited as "Ex.__" and are attached to the Declaration of Nicole A. Eichberger.

2

BL-AR 000038-43; SOF, ¶¶17, 44-53 & 70.  In contrast, the Committee had ultimate and

discretionary responsibility to interpret SERP I.  Dkt. #1, Cmpl., at ¶26; Ex. 5, BL-LIT 00004;

Ex. 3, BL-AR 000079 (Plaintiffs' letter invoking the Committee's fiduciary power); *id*. at BL-

AR 000023-24; SOF, ¶¶18-19, 61-64 & 71.  Prior to the Change in Control, the Committee on

Management was also referred to as the Compensation Committee.  Ex. 4, Waltrip Depo. at 11.

Following the Change in Control, the B+L Board, as permitted under Section 3, reconstituted the

Committee with "the authority and discretion to interpret SERP I."  Ex. 5, BL-LIT 000001-

000005, at 000004 ("the Board desires to appoint the Compensation Committee as the

'Committee,' as such term is used in SERP I . . . ."); *see also* Ex. 7, Mackesy Depo. at 9:10-10:7

(discussing formal reconstitution of the Committee); Dkt. #1, Cmpl., ¶60 (noting Plaintiffs were

informed of same).  It is undisputed that the three members of the reconstituted Committee were

non-managing directors and had no prior connection to B+L.  Ex. 5, BL-LIT 000001-000005, at

000004; Ex. 7, Carney Depo. at 21:17-20 & 28:12-20 & 35:4-10 (noting no prior connection to

B+L).

     The Plan defines the terms "Participant" and "Retired Participant" as follows:

"Participant means an employee of the Company who has been selected to participate in the Plan

pursuant to Section 4."  Ex. 3, BL-AR 000023.  "Retired Participant means a former Participant

who is receiving benefits under this Plan."  *Id*.  The terms Participant, vested Participant, and

Retired Participant are used interchangeably throughout the Plan.  *E.g*., Ex. 3, BL-AR 000108

(noting various Plan Sections using these terms "without apparent distinctions")*.*  Although

Plaintiffs disclaim "Participant" status as to Plan Section 13, *e.g*., Ex. 3, BL-AR 000079-84, at

000080, Plaintiffs do not dispute that they are "Participants" for Plan Sections 2(i), 4, 5(a), 5(c),

5(d), 9, 11, and 12, and as "Participants," are entitled to the rights and benefits that those

3

Sections provide.  Ex. 1, Responses and Objections to Plaintiffs' Requests for Admissions,

Request Nos. 11-14.

> The Plan's Change in Control provision states in relevant part:

>> Upon a Change of Control (as defined below), each Participant
>> shall be fully vested in the benefit set forth in section 5 hereof . . .
>> ***such benefit*** (assuming commencement at age 55 or such greater
>> age as is then attained by the Participant) ***shall be converted to a***
>> ***cash lump sum*** and paid within 15 days following the Change of
>> Control utilizing for this purpose the same actuarial assumptions as
>> are utilized in the Bausch & Lomb Retirement Benefits Plan . . . .

Ex. 3, BL-AR 000032 (emphasis added).  The Plan then defines the circumstances qualifying as

a "Change of Control" event, and it is undisputed that the shareholder vote approving the merger

with Warburg qualified as a Change of Control event under SERP I.  *Id.* at BL-AR 000033;

Dkt. #1, Cmpl., ¶46 (noting B+L transformed from publicly-traded to privately-held).  It is also

clear that the Plan required the conversion of vested benefits to lump sum amounts within 15-

days of the shareholder vote.  Ex. 3, BL-AR 000032.

> The Change in Control provision also prescribes the actuarial factors that must be used to

convert monthly benefits to lump sum amounts.  Ex. 3, BL-AR 000032 (requiring conversion

based on the "same actuarial assumptions as are utilized in the Bausch & Lomb Retirement

Benefits Plan").  There is no dispute that Plaintiffs' monthly benefits were converted into lump

sum amounts based on the required actuarial assumptions (mortality tables and interest rates).

Ex. 3, BL-AR 000044-51 (detailing conversion calculations); *id.* at BL-AR 000108 (rejecting

Plaintiffs' request for conversion calculations using actuarial assumptions other than those

provided by the Plan).

## II.     The Full And Fair Review Of Plaintiffs' Claims

### A.     The Lump Sum Payments

In preparation for the Change in Control transaction, B+L's Human Resources Department analyzed the company's various benefit plans to determine whether the plans contained Change in Control provisions.  Ex. 2, Zaucha Depo. at 18:5-9 & 30:13-24 & 63:15-24.[3]  SERP I was identified, among other plans, as containing a Change in Control provision that would be triggered by a shareholder vote approving the transaction.  *Id*. at 31:16-32:11 & 63:11-24 & 67:6-69:13.  On September 19, 2007, B+L notified each Plaintiff by letter that their SERP I monthly benefits would be converted to lump sum amounts and paid within 15-days of the shareholder vote.  Ex. 3, BL-AR 000038-43 (noting conversion from:  $47,990 per month to an after-tax lump sum of $6,363,740 for Mr. Gill; $9,081 per month to an after-tax lump sum of $1,550,509 for Mr. Holmes; and, $15,863 per month to an after-tax lump sum of $2,134,004 for Mr. McDermott).  Plaintiff Gill, acting through his personal financial planner, immediately questioned the calculation of his lump sum amount.  *E.g*., Ex. 3, BL-AR 000046-47; *id*. at BL-AR 000052-53; Dkt. #1, Cmpl., ¶¶50-52.  B+L's Human Resources personnel, with assistance from actuarial consultants and legal counsel, re-examined the benefit calculations, finding overpayment errors both in the monthly SERP I benefits and the lump sum conversion payments.  Ex. 3, BL-AR 000044-51 (explaining calculation errors and overpayment amounts).  The lump sum payout calculations were corrected, but Plaintiffs were allowed to retain the windfall from the years of monthly overpayments.  Ex. 3, BL-AR 000044-51.  The lump sum conversion payments were distributed on October 5, 2007.  Dkt. #1, Cmpl., ¶47.

---

[3]  Ms. Zaucha was the Vice President of Compensation and Benefits in 2007.  Ex. 2, Zaucha Depo. at 24:24-25:3. She testified that a group of people worked to collect and analyze B+L's benefit plans prior to the corporate transaction.  *Id*. at 63:15-64:9.  Ms. Zaucha was primarily responsible for determining how the corporate transaction would impact the plans, *id*. at 30:13-24 & 64:6-9, and she kept her direct supervisor, Mr. Nachbar – the Senior Vice President of Human Resources – regularly informed of her work.  *Id*. at 64:12-16.

### B.      Administrative Exhaustion

On November 28, 2007, Plaintiffs invoked the Committee's fiduciary authority by submitting a formal claim for benefits.  This claim letter focused on the lump sum conversion formula, asserting that the payments "were far short of what was required under the Plan." Ex. 3, BL-AR 000063-65, at 000064 (according to Plaintiffs:  Mr. Gill's $6.3 million payment should have been $7.2 million; Mr. McDermott's $2.1 million payment should have been $2.5 million; and, Mr. Holmes' $1.4 million payment should have been $1.8 million).  On January 15, 2008, Plaintiffs altered their claim, asserting that the lump sum payments should never have issued because the Change of Control provision applied solely to "Participants," whereas Plaintiffs were "Retired Participants" at the time of the shareholder vote.  Ex. 3, BL-AR 000079-84, at 000080 (asserting that Plaintiffs shed their "Participant" status, in its entirety, upon termination of employment).

Throughout the exhaustion process, outside counsel to the Committee compiled the Administrative Record (the documents the Committee relied upon in making its final and binding benefit determination).[4]  Plaintiffs were given the opportunity to challenge the accuracy and completeness of the initial record, and additional documents concerning other benefit plans were produced for the Committee's review.  *E.g.*, Ex. 3, BL-AR 000429 & BL-AR 000432-504. Based on the arguments and evidence presented by Plaintiffs and B+L, and with the advice of independent counsel, the Committee reviewed and analyzed the Plan to determine whether the shareholder vote triggered lump sum payments to Plaintiffs.  Ex. 3, BL-AR 000106-113; *id*. at BL-AR 509-511 (denying Plaintiffs' appeal).  The Committee rejected Plaintiffs' claims because such a reading of the Plan caused "unacceptable anomalies," *i.e.*, provisions using the term

---

[4]  The Administrative Record is attached as Exhibit 3 to the Declaration of Nicole A. Eichberger, in its entirety:  BL-AR 00001 to BL-AR 000511.

"Participant" do not exclude benefits to "Retired Participants." *See id*. at BL-AR 000107 (noting

Plaintiffs' reading of the Plan caused "unacceptable anomalies")*.*  The Committee provided

multiple examples of the Plan's construction issues raised by Plaintiffs' argument:

- Individuals participating in the plan with vested benefits and terminating employment before age 55, would not qualify as either Participants or Retired Participants;

- Section 12, shielding Participants from amendments that "impair or reduce" their rights, would not protect Plaintiffs;

- Additional benefits for Plaintiffs' wives would not flow because the definition of "Surviving Spouse" is tied to the term Participant, not Retired Participant; and

- Other Sections, such as 5(a) and 5(c), use the terms Participant and Retired Participant "without the exclusionary precision that [Plaintiffs] advocate."

Ex. 3, BL-AR 000107-108; SOF, ¶62.  The Committee thus conducted a thorough examination,

considered all of the arguments and evidence presented, and reasonably rejected Plaintiffs'

claims based on a cogent reading of the Plan as a whole.  SOF, ¶¶61-64.

## III.    Procedural History Of The Litigation

On January 29, 2009, Plaintiffs filed suit in this Court.  Dkt. #1.  This Court granted in

part and denied in part Defendants' motion to dismiss.  Dkt. #24 (dismissing Count 2, the alleged

failure to disclose documents).  The Court permitted Plaintiffs' benefit claim to go forward with

limited discovery as to the alleged conflict of interest (possible reversion of Plan assets to B+L)

and the identity of the plan administrator.  Dkt. #24, p. 7; *see also* Dkt. #45.  Pursuant to the

Court's subsequent discovery orders and directions, Defendants produced documents beyond the

administrative record, including, but not limited to, communications between B+L and its

benefits consultants.  In addition to the extraneous documents produced, Plaintiffs conducted 10

depositions.  Discovery concluded on February 29, 2012, and the uncontroverted facts

demonstrate that the Committee, as the Plan's ultimate decision-maker, conducted a full and fair review of Plaintiffs' claims, and the reversion did not influence the Committee's decision.[5]

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the record shows "that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party must demonstrate that "no reasonable trier of fact could find in favor of the non-moving party."  *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993) (internal quotation omitted).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim."  *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).  "[A] summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a 'metaphysical doubt' concerning the facts."  *Bell Atl. Mobile of Rochester L.P. v. Town of Irondequoit, N.Y.*, --- F. Supp. 2d ----, 2012 WL 289963, at *6 (W.D.N.Y. Jan. 31, 2012) (citing *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991)) (Siragusa, J.).

## ARGUMENT

**I.      As A Matter Of Law, The Compensation Committee's Determination Was Not An Abuse Of Discretion.**

The Committee's decision denying Plaintiffs' claims for benefits is entitled to review under the arbitrary and capricious standard because the Plan grants discretionary authority to the

---

[5]  As discussed, *infra*, discovery beyond the Administrative Record disproved Plaintiffs' conflict of interest allegations and resolved their Plan Administrator identity concerns.  Every deponent who testified on the reversion issue stated that they never even considered and were not influenced whatsoever by the Change in Control conversion payments.  SOF, ¶¶72-77.  Moreover, the extra-record discovery clarified the identity of the Plan Administrator by confirming that the Committee was properly reconstituted by a resolution of the B+L Board.  *Id*. at ¶¶5-7 & 71.

Committee.  *See*, *e.g.*, *Conkright v. Frommert*, 130 S. Ct. 1640, 1646-47 (U.S. 2010);

*Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 110-11 (2008); *Firestone Tire & Rubber Co.*

*v. Bruch*, 489 U.S. 101, 114-15 (1989).  As a matter of law, the Committee's decision was

neither arbitrary nor capricious because the uncontroverted facts demonstrate:  (i) there was no

conflict of interest that influenced the Committee's decision; (ii) the Committee afforded

Plaintiffs a full and fair review during the claim exhaustion process; and (iii) the Committee's

decision was based on reading the Plan as a whole.  Accordingly, summary judgment dismissing

Plaintiffs' Complaint is appropriate.

> ### A.    As a matter of law, the Compensation Committee's decision is entitled to deferential review.

The Committee's decision is entitled to review under the arbitrary and capricious

standard because the Committee is the entity charged with rendering final and binding

interpretations of SERP I.  There is no dispute that the Committee provided Plaintiffs with an

opportunity to be heard, and then exercised its discretion to interpret the Plan in a manner the

Plaintiffs now consider unfavorable.[6]

When "the benefit plan expressly gives the administrator or fiduciary discretionary

authority to determine eligibility for benefits or to construe the plan's terms," the fiduciary's

decision should be upheld unless it is arbitrary and capricious.  *Firestone*, 489 U.S. at 115; *see*

*also Glenn*, 554 U.S. at 115-16 (holding that deferential review applies even to conflicted

fiduciaries); *Durakovic v. Building Serv. 32 BJ Pension Fund*, 609 F.3d 133, 141 (2d Cir. 2010)

("a court may overturn a plan administrator's decision to deny benefits only if the decision was

without reason, unsupported by substantial evidence or erroneous as a matter of law.") (citations

---

[6]  Defendants note that the conversion of monthly benefits to lump sum amounts was a protective Plan feature for Plaintiffs because it allowed access to all future tax-free benefits immediately upon the Change in Control, thus protecting them from possible post-transaction underfunding issues.  It remains unclear exactly how the immediate payment of all future benefits as lump sum amounts can be considered "harmful."

and quotations omitted); *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441-43 (2d Cir. 1995) (holding that courts may not upset reasonable plan interpretations).  It is well established in the Second Circuit that the scope of review is narrow in ERISA cases, meaning courts are not free to substitute their judgment for that of the fiduciary.  *E.g.*, *Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271-72 (2d Cir. 1995) ("The arbitrary and capricious standard of review is highly deferential to a plan administrator . . . as between two reasonable interpretations of the same provision the arbitrary and capricious standard requires the court to uphold the administrator's interpretation."); *Pagan*, 52 F.3d at 442-43. (same.)

Here, the arbitrary and capricious standard applies because the Plan bestowed discretionary authority upon the Committee to construe the Plan and determine whether the Change in Control provision applied to Plaintiffs.  The Plan unambiguously states that "the Committee shall have authority and discretion to select Participants in the Plan, determine the rights and benefits of Participants under the Plan . . . interpret the Plan, and make all determinations deemed necessary or desirable for the administration of the Plan."[7]  Ex. 3, BL-AR 000023-24.  Although the Plan defined the Committee as the "Committee on Management," that committee's name changed to the Compensation Committee.  Ex. 4, Waltrip Depo. at 11.  Following the Change in Control, on November 21, 2007, the B+L Board of Directors adopted a resolution appointing the Compensation Committee as the Committee with "the authority and discretion to interpret SERP I . . . ."  SOF, ¶7.  Even Plaintiffs have recognized the Committee's power "to determine the rights and benefits of [Participants]."  Ex. 3, BL-AR 000079; SOF, ¶5.

---

[7]  The Second Circuit does not require "magic words" to confer the favorable standard of review upon ERISA fiduciaries, but terms such as "discretion" and "deference," as present in SERP I, are generally dispositive.  *Jordan*, 46 F.3d at 1271; *see also Fuller v. J.P. Morgan Chase & Co.*, 423 F.3d 104, 107 (2d Cir. 2005) (plan language stating fiduciary had "full discretion to interpret any and all of the provisions of the Plan" sufficient to confer deferential review).

Plaintiffs' previous argument that the identity of the plan administrator was unknown, and that the Court should not defer to the Committee, confuses or conflates ministerial functions with ERISA's fiduciary functions.  *See* ex. 3, BL-AR 000390-401, at 000400 (quoting letter from Plaintiffs asserting that "it remains unclear whether the Company or the Administrator decided to make the lump sum payments"); Dkt. #1, Cmpl., ¶¶15-17 (asserting that B+L was both plan administrator and fiduciary decision-maker).  As noted above, SERP I designated multiple persons or entities with the authority to determine the rights and benefits of SERP I participants, including but not limited to the Vice President of Human Resources (as the day-to-day administrator), and the Committee (as the ultimate fiduciary decision-maker).

In the ERISA context, it is standard operating procedure for the administrator responsible for day-to-day operation of the plan to make an initial benefit determination.[8]  Participants may then seek review of that determination by the named fiduciary.  This multi-step review process is mandated by the statute:  "In accordance with regulations of the Secretary, every employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."  ERISA § 503, 29 U.S.C. § 1133.  The corresponding regulations define "full and fair review" as, among other things, "a reasonable opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan" and "provide for a review that takes into account all comments, documents, records, and other information submitted by the

---

[8]  The Department of Labor's interpretation of ERISA notes that day-to-day ministerial decisions, including initial benefit determinations, do not qualify as "fiduciary" functions under ERISA.  29 C.F.R. § 2509.75-8, Q&A D-2 (non-fiduciary functions include:  application of the rules determining eligibility for participation or benefits; preparation of employee communications material; calculation of benefits; and processing of claims); *see also Bell v. Pfizer, Inc.*, 626 F.3d 66, 73-74 (2d Cir. 2010) ("the threshold question … is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.") (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)).

claimant." 29 C.F.R. § 2560.503-1(h)(1) & (2); *see also Ashenbaugh v. Crucible Inc.*, 854 F.2d 1516, 1519 & n.2 (3d Cir. 1988) (illustrating and explaining the typical claims procedure:  an initial benefits decision was made by an employee of the company; the Committee, "with final control over the administration of the plan," later reviewed and upheld the initial decision).

The administrative exhaustion process in this matter followed ERISA's claim regulations to the letter.  Employees in B+L's Human Resources department performed their day-to-day administrative tasks by collecting and analyzing all of the benefit plans potentially impacted by the Change in Control. Ex. 2, Zaucha Depo. at 18:5-9 & 30:13-24 & 63:15-24.  These individuals determined that lump sum payments would issue to the participants of each plan with a Change in Control provision, including SERP I.  *Id.* at 31:16-32:11 & 63:11-24 & 67:6-69:13. Plaintiffs challenged the initial decision to convert their monthly benefits to lump sums by submitting their benefit claims to the Committee on November 28, 2007.  SOF, ¶¶57-58.

At no time did Plaintiffs question the Committee's authority to interpret the Plan; indeed, Plaintiffs acknowledged the Committee's "fiduciary role to determine the rights and benefits of [Participants]."  SOF, ¶5; *see also* Dkt. #1, Cmpl., ¶26 (noting Committee's fiduciary status). The Committee reviewed the Plaintiffs' arguments, considered all of the evidence submitted, and then made a determination within its discretionary authority to deny Plaintiffs' claim. SOF, ¶¶61-64.  With the assistance of independent counsel, the Committee applied a coherent reading of the Plan as a whole to conclude that the Change in Control provision required the payment of lump sum benefits to Plaintiffs following the shareholder vote, and that the lump sum amounts, as calculated, were in fact correct.  *Id.*  Now that discovery is complete, there is no dispute that the Committee was the entity charged with deciding Plaintiffs' claims for benefits and, in fact, did.  The Court should thus apply the arbitrary and capricious standard of review to

the Committee's decision.  *Conkright*, 130 S. Ct. at 1646-47; *Glenn*, 554 U.S. at 111-12;

*Firestone*, 489 U.S. at, 114-15.

> **B.**     **As a matter of law, the alleged conflict of interest is entitled to little or no weight because it did not influence the Compensation Committee's decision.**

Plaintiffs were permitted discovery beyond the Administrative Record on an alleged

conflict of interest:  the reversion of excess Plan funds to B+L following the payment of lump

sums to Plaintiffs. Dkt #1, Cmpl., ¶72 (detailing conflict allegation); Dkt #45 (expanding scope

of discovery beyond the Administrative Record).  Discovery revealed that the possible reversion

of plan assets was not a factor in the Committee's denial of Plaintiffs' claim for benefits.

Accordingly, the alleged conflict is immaterial to the Court's review of this matter.

The Supreme Court ruled in *Glenn* that the arbitrary and capricious standard applies,

regardless of any conflict of interest.  554 U.S. at 116-17 (holding that a conflict is merely a

factor to consider under deferential review); *Frommert*, 130 S. Ct. at 1647 ("a systemic conflict

of interest does not strip a plan administrator of deference"); *see also Hobson v. Metropolitan*

*Life Ins. Co.*, 574 F.3d 75, 82-83 (2d Cir. 2009) (applying *Glenn* to hold that conflicted plan

administrator still entitled to deferential review); Dkt. #24, p. 7 (citing *Glenn* to note that an

alleged conflict of interest does not alter the deferential standard of review).  "The weight

properly accorded a *Glenn* conflict varies in direct proportion to the likelihood that the conflict

affected the benefits decision."  *Durakovic*, 609 F.3d at 139 (internal quotation omitted); *see also*

*Marrs v. Motorola, Inc.*, 577 F.3d 783, 789 (7th Cir. 2009) (holding conflicts are not

determinative unless the circumstances indicate that "the decision denying benefits was

***decisively*** influenced by the plan administrator's conflict of interest.") (emphasis added).

Although Plaintiffs cast a broad discovery net, there is no evidence that the potential reversion of

Plan assets affected the Committee's decision, let alone the ministerial calculation that resulted

in the lump sum payments.

In the wake of *Glenn*, the issue is whether the alleged conflict influenced SERP I's fiduciary decision-maker:  the Committee.  *Durakovic*, 609 F.3d at 139; *Marrs*, 577 F.3d at 789. Plaintiffs explored their conflict of interest allegation by conducting discovery in the form of interrogatories, document requests, and depositions.  Notwithstanding the fact that Plaintiffs deposed each Committee member, as well as B+L's human resources personnel and B+L's top corporate officers at the time of the Change in Control, they were unable to unearth any basis for according material weight to the alleged conflict.  Here, the record demonstrates that the potential for reversion was a non-factor as to the Committee.  *E.g.*, Ex. 6, Mackesy Depo. at 108:10-109:3 (testifying that the possibility of reversion was "not a consideration at all in [the Committee's] deliberations.").[9]  In contrast to Plaintiffs' allegations, the Committee's determination was devoid of any influence by the potential reversion of plan assets.

As a matter of law, the alleged conflict is immaterial to the Court's deferential review of the Committee's decision because Plaintiffs' extensive discovery efforts yielded no evidence that the potential for reversion of assets actually influenced the challenged decision.  *Durakovic*, 609 F.3d at 139.  Because the alleged conflict of interest did not influence the Committee's decision, the Court should uphold the administrative denial of Plaintiffs' claims and grant Defendants' summary judgment.

### C.    As a matter of law, the Compensation Committee provided Plaintiffs a full and fair review of their benefit claims under ERISA.

The Committee afforded Plaintiffs a full and fair review as required by the statute.  There is no merit to Plaintiffs' "procedural irregularities" argument, a manufactured attempt to escape

---

[9]  Discovery also revealed that the alleged conflict did not influence B+L's Human Resources personnel or top executives at the time of the Change in Control.  SOF, ¶¶73-77.

from deferential review.  *See* Ex. 3, BL-AR 000390-401, at BL-AR 000397-99 (alleging failure

to produce relevant information and other procedural foot faults during administrative review

process).  It is beyond dispute that the administrative exhaustion process complied with ERISA's

standards because Plaintiffs were afforded the opportunity to submit all of their arguments and

evidence,[10] and the Committee's decision weighed these submissions against the terms of the

Plan as a whole.  *See* 29 C.F.R. § 2560.503-1(h) (defining "full and fair" review); BL-AR

000510 ("the Committee has arrived at its interpretation by reference to the language of SERP I

read as a whole").

Moreover, any perceived deficiencies in the Administrative Record were corrected by the

discovery conducted during the course of this litigation.  Discovery beyond the administrative

record resulted in: (i) a clear understanding of the Committee's powers and role in the

administrative exhaustion process, *i.e*., the Committee's identity as the Plan Administrator is

now indisputable, and (ii) testimony that the alleged conflict of interest was immaterial to the

Committee's decision.  *See* Argument §§ I.A & I.B, *supra.*

>    **D.**      **As a matter of law, the Compensation Committee's decision was not**
>                 **arbitrary and capricious.**

The Committee's rejection of Plaintiffs' fractured Plan interpretation and corresponding

claims for benefits should be upheld as neither arbitrary nor capricious.  The Committee's

analysis and interpretation of the Plan reasonably rejected Plaintiffs' theory that the terms

Participants and Retired Participants are mutually exclusive categories because this interpretation

cannot be squared with a cohesive reading of the Plan.  Both ERISA fiduciaries and reviewing

courts must read benefit plans "***as a whole***, giving terms their plain meanings."  *Fay v. Oxford*

---

[10]  The Committee allowed Plaintiffs to challenge the accuracy and completeness of the initial record, and permitted
Plaintiffs to submit additional documents and arguments for the Committee's review.  SOF, ¶60.

*Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002) (emphasis added); *Kinek v. Paramount*

*Communications, Inc.*, 22 F.3d 503, 509 (2d Cir. 1994) (rejecting an attempt to read sections of

an ERISA plan in isolation: "all provisions of a contract [must] be read together as a

***harmonious whole***") (emphasis added); *Lyons v. Fairfax Properties, Inc.*, 285 F. Supp. 2d 124,

132 (D. Conn. 2003) (granting summary judgment to defendant because rules of construction

required "a coherent interpretation of the various provisions").  The Second Circuit has explicitly

ruled that ERISA plans are governed by the "cardinal principle" of contract construction:  a plan

"should be read to give effect to all its provisions and to render them consistent with each other."

*Perreca v. Gluck*, 295 F.3d 215, 224 (2d Cir. 2002) (internal quotation omitted).

     The Committee provided Plaintiffs with a full and fair opportunity to be heard, but was

compelled to reject their reading of the terms Participant and Retired Participant.[11]  Ex. 3, BL-

AR 509-511, at BL-AR 000509-10.  ("the Committee has arrived at its interpretation by

reference to the language of SERP I as a whole.").  As discussed at length in the Committee's

claim denial letters, Plaintiffs' interpretation unravels when applied beyond Section 13 because it

renders other Plan provisions meaningless.  *Id.* at BL-AR 000107-108 (providing examples that

disprove Plaintiffs' argument).  Despite Plaintiffs' protests, the Committee exercised its

discretion in a reasonable fashion because the "harmonious" interpretation of these key terms

recognizes that Participant status is enduring, not fleeting, during the life of the Plan.  *Id.* (noting

Committee's denial letter noted the "more natural construction" of the key terms).

     It is undisputed that the shareholder vote qualified as a Change in Control event, and that

Plan Section 13 required conversion of monthly benefits to lump sum amounts pursuant to

---

[11]  Plaintiffs' argument is contained in their January 15, 2008 letter.  Ex. 3, BL-AR 000079-84, at BL-AR 000080 ("The change in control provision applies only to Participants.  It does not refer to Retired Participants, and therefore does not apply to [Plaintiffs]."); *id.* (asserting that Plaintiffs were "no longer Participants" at the time of the Change in Control); *see also id.* (using term "Covered Executives" to avoid referring to Plaintiffs as "Participants").

specific actuarial assumptions (interest rates and mortality tables) for any and all Participants. SOF, ¶39 & 43.  Because Plaintiffs satisfied the definition of "Participant" – based on the Plan as a whole – there can be no genuine issue of material dispute that lump sum payments were properly disbursed within 15 days of the shareholder vote.

## II.    As A Matter of Law, The Plan Required Lump Sum Payments To Vested Participants.

Even if the Court were to review SERP I *de novo*, the result would be the same.  In light of the fact that Plaintiffs retained their "Participant" status, even after retirement, the lump sum calculations and distributions were compelled by the Plan.  Plaintiffs' argument – that Section 13 applies only to Participants, not Retired Participants – cannot be applied across the Plan as a whole without a resulting loss of benefits and rights to Plaintiffs.  Accordingly, Plaintiffs' strained reading of SERP I contradicts well-established law, and the Court should uphold the Committee's decision under any standard of review.

As noted above, courts uniformly apply the axioms of contract interpretation to ERISA plans:[12]  "[T]he plan must be read as a whole, considering separate provisions in light of one another and in the context of the entire agreement."  *Kinek*, 22 F.3d at 509 (noting plan provisions must be read "as a harmonious whole"); *see also  Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 838 (7th Cir. 2012) (applying *de novo* review and holding plain terms of plan, read as a whole, compelled denial of plaintiffs' claim); *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (reviewing contract dispute:  "If the document as a whole makes clear the parties' over-all intention, courts examining isolated

---

[12] *See also Lifson v. INA Life Ins. Co. of NY*, 333 F.3d 349, 352-53 (2d Cir. 2003) (noting ERISA benefit claims are governed by federal common law, but that "ERISA common law is largely informed by state law principles" and that plans must be read as a whole).

provisions should then choose that construction which will carry out the plain purpose and object of the agreement.") (internal quotations omitted).

Multiple provisions of SERP I provide rights and benefits to "Participants" that, if Plaintiffs' narrow reading of the term "Participant" was correct, would not flow to Plaintiffs. Their interpretation therefore yields absurd results when applied to SERP I as a whole:

*First*, Section 5(c) states that vested benefits commence at age 55. Applying Plaintiffs' theory that Participants and Retired Participants are separate and mutually exclusive categories creates an anomaly for any person retiring prior to age 55 with vested benefits. Such individuals would fail Plaintiffs' definition of "Participant" or "Retired Participant," precluding them from protections that would otherwise flow during the period between termination and age 55. *See* Ex. 3, BL-AR 000107-108.

*Second*, Section 12 states that Participants are shielded from amendments that "impair or reduce" their rights. Applying Plaintiffs' hyper-technical reading of the terms "Participant" and "Retired Participant" to this section results in an anomaly: B+L could amend or terminate the plan in a manner that could impair the rights of Retired Participants. *Id.*

*Third*, the Plan's definition of "Surviving Spouse" is tied to the term Participant, not Retired Participant. Again, Plaintiffs' construction of the Plan is nonsensical because a Retired Participant could not have a Surviving Spouse, meaning that Plaintiffs' spouses would lose death benefits. *Id.*

*Fourth*, other plan provisions, such as Section 5(c), fail to use the terms Participant and Retired Participant as perfectly exclusionary from each other. *Id.*

*Fifth*, Section 9 of the Plan is titled "Funding," and states that "[t]he Company shall establish an irrevocable secular trust for each **Participant** . . . [n]otwithstanding the

establishment of the trust, the Company remains ultimately responsible to pay promised benefits to each **vested Participant**." Ex. 3, BL-AR 000030.  Applying Plaintiffs' preferred interpretation means that the Company had no funding obligations to mere Retired Participants during the life of the Plan.

Even under *de novo* review, as a matter of law, the Committee's decision was correct and the Court should dismiss Plaintiffs' Complaint.  Contrary to Plaintiffs' assertions, the Committee's decision correctly relied on the Plan as a whole to determine that "Participant" status is not eradicated upon retirement.  The provisions noted above demonstrate that Plaintiffs' interpretation would cause inconsistencies and the forfeiture of benefits, whereas the Committee's reading – that Plaintiffs were both Participants and Retired Participants at the time of the Change in Control event – aligns with the fact that Plaintiffs actually received all of the benefits that flowed to "Participants."  The Committee's decision, consistent with the language of the Plan and ERISA, is the only interpretation that harmonizes the multiple provisions that use the terms Participant and Retired Participant.

In sum, as a matter of law, the plain terms of the Plan required the payment of lump sum benefits to Plaintiffs/Participants as a result of the Change in Control event.  Thus, summary judgment dismissing Plaintiffs' Complaint is appropriate.

**<u>CONCLUSION</u>**

For the foregoing reasons, summary judgment should be awarded to Defendants.

DATED this 16th day of April, 2012.

Respectfully submitted,

By:   */s/ Nicole A. Eichberger*
Howard Shapiro (*admitted pro hac vice*)
Nicole A. Eichberger (*admitted pro hac vice*)

19

PROSKAUER ROSE LLP
650 Poydras Street, Suite 1800
New Orleans, Louisiana 70130
Tel:  (504) 310-4088

--AND--

David Rothenberg
GEIGER AND ROTHENBERG, LLP
800 Times Square Building
45 Exchange Street
Rochester, New York  14614
Tel:  (585) 232-1946

*Attorneys for Defendants*