UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DANIEL E. GILL, THOMAS C. McDERMOTT,
and JAY T. HOLMES,

Plaintiffs,

vs.

BAUSCH & LOMB SUPPLEMENTAL
RETIREMENT INCOME PLAN I,
BAUSCH & LOMB INCORPORATED,
and COMPENSATION COMMITTEE OF
THE BAUSCH & LOMB BOARD OF
DIRECTORS,

Defendants.

Civil Action No.:

09-CV-6043 CJS/MWP

_____

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

_____

Harold A. Kurland (hkurland@wardgreenberg.com)
Heidi S. Martinez (hmartinez@wardgreenberg.com)
Taren N. Greenidge (tgreenidge@wardgreenberg.com)
*Attorneys for Plaintiffs*
WARD GREENBERG HELLER & REIDY LLP
300 State Street
Rochester, New York 14614
(585) 454-0700

## TABLE OF CONTENTS

Table of Authorities ............................................................................................ii

Preliminary Statement .........................................................................................1

Facts ....................................................................................................................2

Argument .............................................................................................................2

POINT I:   DEFENDANTS' DECISIONS TO REDUCE PLAINTIFFS' BENEFITS
AND TERMINATE THEIR RIGHTS UNDER SERP I ARE NOT
ENTITLED TO DEFERENTIAL REVIEW ...............................................2

POINT II:  THE DECISIONS MUST BE SET ASIDE WHETHER OR NOT THE
DEFERENTIAL REVIEW STANDARD APPLIES ...................................12

    A.   Defendants' Interpretation of SERP I Is Illogical .................................12

    B.   Defendants' Undisputed Conflict of Interest Affected their Decisions
as to Plaintiffs' Rights under SERP I ...................................................16

Conclusion ..........................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Cannon v. UNUM Life Ins. Co. of America*, 219 F.R.D. 211 (D. Me. 2004) ............................... 11

*Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739 (2004) .......................................... 13 n.2

*Durakovic v. Building Serv. 32 BJ Pension Fund*, 609 F.3d 133 (2d Cir. 2010) ............. 18, 19, 20

*Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215 (2d Cir. 2006)............................................. 5 n.1

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989)................................................ 2, 3, 11

*Marrs v. Motorola, Inc.*, 577 F.3d 783 (7th Cir. 2009) ................................................................ 18

*McIntyre v. Aetna Life Ins. Co.*, 581 F. Supp. 2d 749 (W.D. Va. 2008)...................................... 21

*Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008) ...................................................*passim*

*Mortgage Lenders Network USA, Inc. v. CoreSource, Inc.,* 335 F. Supp. 2d 313
   (D. Conn. 2004)........................................................................................................ 6, 7

*O'Shea v. First Manhattan Co. Thrift Plan & Trust*, 55 F.3d 109, 112 (2d Cir.
   1995)............................................................................................................................ 16

*Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377 (3d Cir. 2000)....................................... 18

*Prado v. Allied Domecq Spirits and Wine Group Disability Income Policy*, 800 F.
   Supp. 2d 1077 (N.D. Cal. 2011)............................................................... 11, 19, 20

*Schultz v. Stoner*, 2009 WL 455163 (S.D.N.Y. Feb. 24, 2009) ............................................ 22, 24

*Sharkey v. Ultramar Energy Ltd.,* 70 F.3d 226 (2d Cir. 1995)................................................. 3, 11

*Smith v. Columbia Gas of Ohio Grp. Med. Ben. Plan*, 624 F. Supp. 2d 844 (S.D.
   Ohio 2009)...................................................................................................................... 7

*Strope v. Unum Provident Corp.*, No. 06-CV-628C, 2010 WL 1257917
   (W.D.N.Y. Mar. 25, 2010) ........................................................................................ 12

*Sullivan v. LTV Aerospace and Defense Co.*, No. 91-CV-7138, 1993 WL 405495
   (W.D.N.Y. Sept. 30, 1993)......................................................................................... 16

*Trussel v. Cigna Life Ins. Co. of New York*, 552 F. Supp. 2d 387 (S.D.N.Y. 2008)..................... 18

*Weaver v. Prudential Ins. Co. of America*, No. 3:10–cv–438, 2011 WL 4833574
   (M.D. Tenn. October 12, 2011)................................................................................... 7

**Statutes and Regulations**

29 U.S.C. § 1002 ............................................................................................................... 6

29 U.S.C. § 1054 ......................................................................................................... 13 n.2

29 U.S.C. § 1104 ......................................................................................................... 21, 24

29 C.F.R. § 2560.503-1 ................................................................................................ *passim*

## PRELIMINARY STATEMENT

Defendants' argument that they are entitled to summary judgment based on a deferential review standard circumvents the obvious problem that the decisions to make cash lump-sum payments to the three SERP I beneficiaries, to instruct the trustee not to make any further periodic payments to the beneficiaries, and to terminate their participation in SERP I all were final decisions made by B&L personnel who were not authorized under SERP I to make them. This is not cured by the later attempt to create a review process through a reconstituted Compensation Committee, a process that was seriously flawed and arbitrary. Regardless of the standard of review, however, defendants' motion for summary judgment must be denied because, in reducing plaintiffs' benefits and cutting off their rights under SERP I, defendants violated both SERP I's plain terms and ERISA in numerous respects.

## FACTS

The relevant facts are set forth in plaintiffs' motion for summary judgment, also filed April 16, 2012, including the Kurland affidavit sworn to that date, with accompanying exhibits (Docket No. 56-1), which is incorporated by reference, and plaintiffs' memorandum of law in support of their motion for summary judgment ("Plaintiffs' Mem.")(Docket No. 56-6). Plaintiffs also rely on their statement of material facts not in dispute, dated April 16, 2012 ("Plaintiffs' Fact Statement") (Docket No. 56-3), and Plaintiffs' Opposing Statement in Response to Defendants' Rule 56 Statement, dated May 18, 2012.

In summary, plaintiffs are former top executives of Bausch & Lomb Incorporated ("B&L") who, together with their spouses, are the only beneficiaries of SERP I, a supplemental retirement income plan. Plaintiffs' rights in SERP I vested before December 18, 1990, when the Plan's change in control section was amended. Plaintiffs' Fact Statement ¶¶ 1-3. As of

September 2007, plaintiffs were long-retired, they had been receiving benefits under SERP I, and they were Retired Participants as defined in SERP I. *Id.* ¶¶ 12-13. At that time, Laurie Zaucha, B&L's Vice President, Compensation & Benefits, advised plaintiffs that their respective SERP I benefits would be converted to a cash lump sum, and that their "participation in SERP I will cease" and they "will receive no further benefit under the plan." *Id.* ¶ 15.

B&L had solicited and obtained opinions from consultants concluding that the change in control provision at issue was not applicable to plaintiffs, as retired employees of B&L. *Id.* ¶¶ 22-24. There is no evidence that any personnel at B&L senior to Ms. Zaucha were told about these opinions or that they were actively involved in the decisions at issue. *Id.* ¶¶ 25-26. The Compensation Committee of the B&L Board of Directors as of 2007 was not involved at all. *Id.* ¶ 27. The reconstituted Compensation Committee in whose name decisions were made in 2008 ("the 2008 Committee") was not provided the consultant opinions (*id.* ¶ 28), relied only on the SERP I language and did not consider the context for the decisions made in September 2007. *Id.* ¶ 29. There is no evidence the 2008 Committee reviewed any documents regarding those decisions, except for arguments of counsel (*id.* ¶ 30), and the 2008 Committee did not write, edit, or sign any decision. Its lead member testified that they never met in person, and there is no evidence as to the content of any deliberations the 2008 Committee may have had. *Id.* ¶ 31.

## ARGUMENT

### POINT I

### DEFENDANTS' DECISIONS TO REDUCE PLAINTIFFS' BENEFITS AND TERMINATE THEIR RIGHTS UNDER SERP I ARE NOT ENTITLED TO DEFERENTIAL REVIEW

Defendants improperly rely on *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), for the proposition that their decisions are entitled to review under an arbitrary and

capricious standard of review (Def. Mem. at 9) because the general rule set forth by *Firestone* is directly to the contrary:

> As this case aptly demonstrates, the validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue. Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

489 U.S. at 115. Here, SERP I granted discretion to the B&L Board of Directors' Committee on Management to interpret SERP I or make other decisions affecting benefits, and authorized the Vice President of Human Resources only to administer SERP I as to matters not involving discretion. SERP I §§ 2(a), 3, Dep. Ex. P-1, Ex. A. to Kurland aff. (Citations to lettered exhibits are to exhibits to the Kurland affidavit in support of plaintiffs' motion, Docket No. 56-1.)

Because SERP I conferred discretionary authority only on the Committee on Management, decisions by B&L human resources staff were without discretionary authority and not entitled to deferential review under *Firestone*. *See Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 229 (2d Cir. 1995) ("[w]here an unauthorized party makes the determination, a denial of plan benefits is reviewed under the *de novo* standard."). Further, the burden to establish that the benefits determination is entitled to such deference is on the party seeking such deference, "since the party claiming deferential review should prove the predicate that justifies it." *Id.* at 230.

Defendants' argument that the decisions at issue are entitled to deferential review, apparently because the 2008 Committee many months later rejected a challenge to B&L's decisions (Def. Mem. at 9-11), clearly is not the type of process that falls within the *Firestone* exception. The decisions to make the cash lump-sum payments and terminate future benefits under SERP I were communicated by Ms. Zaucha (Dep. Exs. P-65, P-66, and P-67, Ex. M), and

3

the direction to the SERP I trustee not to make further payments to plaintiffs was made by B&L's Chief Financial Officer.  Dep. Ex. 35, Ex. N.  This is discussed in detail at Kurland aff. ¶¶ 38-43, and supported by documents and deposition testimony, which is excerpted at Ex. V and summarized at Kurland aff. ¶ 61.  There was no involvement of any Board committee at that time or before the decisions were finalized, the lump sum payments were made, and plaintiffs' rights in SERP I were terminated.  Plaintiffs' Fact Statement ¶¶ 25-27.

Defendants' assertion that "SERP I designated multiple persons or entities with the authority to determine the rights and benefits of SERP I participants, including but not limited to the Vice President of Human Resources (as the day-to-day administrator) . . . ."  (Def. Mem. at 11) is not a fair characterization of SERP I § 3 (Dep. Ex. P-1, Ex. A) or the facts.  Section 3 provides that the only entity entitled to exercise discretionary authority is the Committee on Management, and the Vice President of Human Resources may administer SERP I as to non-discretionary matters.  *Id.*  Here, there is no evidence that either one was involved in any way with the decisions at issue; neither one even existed at that time.  Plaintiffs' Fact Statement ¶ 10; Plaintiffs' Opposing Statement in Response to Defendants' Local Rule 56 Statement ¶¶ 18-19.

Defendants' claim that it is "standard operating procedure for the administrator" (whom they assert was both the Vice President of Human Resources and the Committee on Management; Def. Mem. at 2) to make an "initial benefit determination," and that an initial benefit decision is not "fiduciary" in nature (*id.* at 11) also is incorrect.

First, the decisions at issue were not merely an "initial benefit determination."  They undoubtedly were an "adverse benefit determination" under ERISA, which is defined as "a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part)

4

for, a benefit . . . ." 29 C.F.R. § 2560.503-1(m)(4), as Judge Payson concluded in rejecting defendants' opposition to plaintiffs' motion to compel disclosure. Docket No. 45 at 11-14.

That adverse benefit determination clearly was intended to be final. The letters B&L sent to plaintiffs did not suggest that the decision was preliminary or subject to review or approval by anyone. Dep. Exs. P-65, P-66, and P-67, Ex. M. Those letters did not even advise plaintiffs, despite ERISA's requirement that they do so, that they were entitled to challenge the decision. *See* 29 C.F.R. § 2560.503-1(g)(1) (requiring notification of adverse benefit determinations, including "a description of the plan's review procedures and the time limits applicable to such procedures . . ."). In fact, no procedures for doing so even existed at that time.[1] Response to Request for Admission No. 20, Ex. G; Dep. Ex. P-83, Ex. U.

When Gill's financial advisor raised objections and asked to discuss the proposed lump sum payments, Zaucha immediately responded that the decision "isn't a proposal." Dep. Ex. P-79, Ex. R. B&L also ordered the SERP I trustee to cease paying plaintiffs' monthly benefits (Dep. Ex. P-35, Ex. N) and issue the lump sum payments, and terminated plaintiffs' rights under the Plan. Dep. Ex. P-74, Ex. P; Dep. Exs. P-65, P-66, P-67, Ex. M. All of this was done without the approval or knowledge of either the Committee on Management or the Compensation Committee. Plaintiffs' Fact Statement ¶ 27. B&L's decision unquestionably was intended to be final, and not merely advisory.

---

[1] Because no procedures to challenge the adverse benefit determination existed, plaintiffs were free to proceed immediately to federal court under ERISA's "deemed exhausted" rule. 29 C.F.R. § 2560.503-1(l); *Eastman Kodak Co. v. STWB, Inc.,* 452 F.3d 215, 222 (2d Cir. 2006) (holding that the regulatory "deemed exhausted" provision "may not be circumvented by a plan's belated creation of an ERISA-compliant claims procedure"). The fact that plaintiffs immediately could have challenged B&L's actions in court further confirms the finality of B&L's adverse benefit decision.

Second, there is no question that the decision made by B&L to issue the lump sum payments and terminate plaintiffs' participation in SERP I was a discretionary decision, not a ministerial one. Ministerial functions under ERISA are limited to those involving no decision-making. *Mortgage Lenders Network USA, Inc. v. CoreSource, Inc.,* 335 F. Supp. 2d 313, 319 (D. Conn. 2004) ("the distinction between discretionary and ministerial functions rests on whether the functions merely implement plan policy, practice and procedures, or have the ability to impact, modify or further the development of plan policy and practice, such as by interpreting or making decisions about the plan."); *see also* 29 U.S.C. § 1002(21)(A) ("a person is a fiduciary with respect to a plan to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . .").

B&L management clearly exercised discretion when they:

- "[R]eviewed" SERP I "to determine what actions would be necessary . . . when the Change in Control would happen" (Zaucha dep. 30:19-24, Ex. Y);

- Sought and considered advice from consultants about whether the Change in Control provision applied to plaintiffs (Dep Exs. P-21 and P-41, Exs. J and K; Reigle dep. 36:6-37:24, Ex. Y);

- Rejected the consultants' opinion that the Change in Control provision did not apply to plaintiffs (Reigle dep.85:3-86:22, Ex. Y);

- Wrote one of those consultants to report that "[n]o final decision has been made as of yet," and that "everyone would like these SERP plans to go away, it's just doing it the correct way and covering all options" (Dep. Ex. P-56, Ex. L);

- Offered to meet with Gill's financial advisor regarding "the differences in how we are interpreting the Plan" (Dep. Ex. P-79, Ex. R);

- Wrote plaintiff Gill's representative that B&L had "reviewed internally" the "lump sum payout methodology" and "reviewed [that methodology] with the Company's regular outside benefits counsel, with two actuarial firms, and with an external non-qualified benefits expert," and "re-reviewed the methodology and

Plan interpretation" with such parties and "engaged another outside benefits lawyer for a further assessment of the matter" (Dep. Ex. P-102, Ex. R);

- "[D]etermined that lump sum payments would issue to the participants" of SERP I (Def. Mem. at 12);

- Directed the trustee to cease all monthly payments to plaintiffs under SERP I and subsequently to make the lump sum payments (Dep. Ex. P-35, Ex. N);

- Issued letters to the plaintiffs advising them that due to the change in control their "SERP I benefits [would] be converted to a cash lump sum" and that "[a]fter this payout, [their] participation in SERP I [would] cease and [they would] receive no further benefit under the plan." (Dep. Exs. P-65, P-66, and P-77, Ex. M).

These actions unquestionably are discretionary in nature. *See Weaver v. Prudential Ins. Co. of America*, 3:10–cv–438, 2011 WL 4833574, at *9 (M.D. Tenn. October 12, 2011) (human resources representative was fiduciary to extent he engaged in discretionary task of plan interpretation); *see also Smith v. Columbia Gas of Ohio Grp. Med. Ben. Plan*, 624 F. Supp. 2d 844, 855, n.1, 858-62 (S.D. Ohio 2009) (rejecting defendant's contention that termination of plan benefits was merely ministerial function); *Mortgage Lenders*, 335 F. Supp. 2d at 319 ("a benefit determination that requires interpretation of plan provisions is a discretionary, not ministerial, act if it is the final decision on a disputed claim rather than a mere recommendation"). The fact that Reigle and Zaucha purposely avoided the word "interpret" when testifying about their review of SERP I (Reigle dep. 95:21-96:2, Zaucha dep. 67:16-68:22, Ex. Y) does not negate the fact that they did just that.

Defendants' claim that the Court should limit itself to deferential review because they "followed ERISA's claim regulations to the letter" (Def. Mem. at 12) also is incorrect. Defendants by no means "followed ERISA's claim regulations to the letter." Indeed, the entire process surrounding the adverse benefit determination and its review was plagued with ERISA violations. Zaucha's letter advising plaintiffs of the adverse benefit determination failed to

7

comply with ERISA's notice requirements because, among other reasons, it did not refer to the specific plan provisions on which it was based, and it did not advise plaintiffs of the Plan's review procedures (indeed, there were none at that time) and their right to file a civil action challenging the decision. Dep. Exs. P-65, P-66, and P-67, Ex. M; 29 C.F.R. § 2560.503-1(g)(1).

Nor did the process followed by the 2008 Committee satisfy ERISA's requirement that plaintiffs be afforded a full and fair review of the adverse benefit determination. Notwithstanding B&L's failure to notify plaintiffs of their rights, plaintiffs raised a formal objection to the decision no later than October 5, 2007. Ex. S. ERISA regulations require that a claimant be notified of "the plan's benefit determination on review" within 60 days of his request. 29 C.F.R. § 2560.503-1(i)(1)(i). Thus, a decision on plaintiffs' October 5 objections (or notification of "special circumstances" justifying a single, 60-day extension) should have been made no later than December 5, 2007. *See id.* The 2008 Committee was not even vested with discretionary powers until November 21, 2007, and did not issue a decision until April 14, 2008, more than six months after the objections were raised and the final payments were made. Zorn letter of April 14, 2008, Ex. V.

More importantly, the 2008 Committee violated ERISA regulations by failing to ensure that plaintiffs received copies of all documents that were "submitted, considered, or generated in the course of making the benefit determination." *See* 29 C.F.R. §§ 2560.503-1(h)(2)(iii), (m)(8). Plaintiffs requested copies of all documents relevant to B&L management's decision on numerous occasions, starting with the date the lump-sum payments were made (Kurland letter of October 5, 2007, Ex. S), and including a response to the first Ropes & Gray LLP letter written on behalf of the 2008 Committee, which recited the history of numerous rejected requests for such information and asked the 2008 Committee to direct B&L to provide "copies of all

communications with the consultants and the trustee regarding these issues." Kurland letter of February 29, 2008, BL-AR 000097-99 at BL-AR 000098, Defendants' Ex. 3: Part 2 Administrative Record ("AR") Docket No. 55-7 at 13 of 72.

On March 11, 2008, Ropes & Gray, purportedly acting on behalf of the 2008 Committee as the newly appointed Plan Administrator, stated that the Administrator "is not empowered to require that the Company produce any particular item of requested information," and that the documents requested were not relevant because plaintiffs' claims rested upon matters of claim interpretation. Zorn letter of March 11, 2008, BL-AR 000104-05, AR, Docket No. 55-7 at 19 of 72. ERISA requires the administrator to provide such documentation, however.  29 C.F.R. § 2560.503-1(h)(1), (h)(2)(iii), (m)(8) (review of an adverse benefit determination is not "full and fair" unless, upon request, the administrator produces all documents "submitted, considered, or generated in the course of making the benefit determination . . .").  On April 14, without producing the requested documents or considering them in connection with its decision, the 2008 Committee denied plaintiffs' claims. Zorn letter of April 14, 2008, Ex. V.

Plaintiffs continued to press for the information even on appeal, when they again explicitly requested "[c]opies of all communications with consultants and the Wells Fargo trustee relating to the benefit determination." Kurland letter of June 12, 2008 at 8, BL-AR 000114-25 at BL-AR 000121, AR, Docket No. 55-7 at 36 of 72.  Eventually, Ropes & Gray, on behalf of the 2008 Committee, changed course and directed B&L to produce relevant documents, including "[a]ny documents reflecting communications with consultants . . . relating to the Claimants' benefit determinations" and "[a]ny other documents that relate to the process by which the Company made its benefit determinations in this matter." Zorn letter of July 15, 2008, BL-AR 000126-27, *id.* at 42 of 72.

B&L subsequently produced additional documents, under the Shapiro letter of August 8, 2008, BL-AR-000149-50, *id.* at 64 of 72, but not everything the Zorn letter requested. Also, B&L did not say what it was producing or withholding, and did not acknowledge whether any communications with consultants even existed. In fact, B&L did have additional documents that it withheld, including:

- The June 6, 2007 report prepared by Mercer Human Resource Consulting at Reigle's request, discussing in detail the applicability of the SERP I change in control provision to plaintiffs, and concluding that it did not apply to them because they were not Participants, as defined by SERP I, as of the change in control (Dep. Ex. P-21, Ex. J);

- The August 8, 2007 email message from benefits consultant Nadir Minocher of Westport Strategies, responding to B&L's request for a "return email with your position re: the applicability of change of control to SERP I," in which he advised that "[a] change of control at B&L should not have any effect on it [SERP I]" (Dep. Ex. P-41, Ex. K); and

- The August 17, 2007 email from Reigle to Minocher advising him that "[n]o final decision has been made as of yet. We wanted to get everyone together to discuss all options and what effect the change in control has on the plans. We want to make sure we are covering all ends before that decision is made. I think in the end everyone would like these SERP plans to go away, it's just doing it the correct way and covering all options" (Dep. Ex. P-56, Ex. L).

These documents clearly were generated in the course of B&L's decision to issue the lump sum payments and terminate plaintiffs' rights under SERP I, and thus the 2008 Committee was required by law to produce them upon plaintiffs' request. *See* 29 C.F.R. § 2560.503-1(h)(1), (h)(2)(iii), (m)(8). B&L apparently never provided such documents to the 2008 Committee in connection with its review, and ultimately produced them to plaintiffs only after Judge Payson ordered them to do so. Docket No. 45.

Defendants' decision to withhold documents that support plaintiffs' interpretation of SERP I, as well as their numerous other regulatory and procedural missteps, denied plaintiffs a reasonable opportunity for full and fair review of the adverse benefit determination. *See, e.g.,*

*Prado v. Allied Domecq Spirits and Wine Group Disability Income Policy*, 800 F. Supp. 2d 1077, 1095-97 (N.D. Cal. 2011) (administrator's refusal to produce documents requested by plaintiff during claims process, which continued well after plaintiff filed lawsuit, violated ERISA and denied plaintiff full and fair review of his claim); *Cannon v. UNUM Life Ins. Co. of America*, 219 F.R.D. 211, 215 (D. Me. 2004) ("[r]emoval of 'contrary evidence' from the [administrative] record does not comport with full and fair claims review").

The above sequence of events cannot convert B&L's clearly unauthorized acts into properly delegated exercises of discretion under SERP I.   The purpose of the *Firestone* exception, by which the courts grant deference to plan fiduciaries that exercise discretion under an ERISA plan where duly authorized by that plan, clearly are not served here.  Appointing, after the fact, the 2008 Committee, calling plaintiffs' claims an application for new benefits, refusing to acknowledge that B&L's decision was an adverse benefit determination that reduced plaintiffs' benefits and terminated their rights under SERP I, and having the 2008 Committee, acting entirely through Ropes & Gray, interpret SERP I six months later, particularly where its "review" failed to meet even the minimum fairness requirements required by ERISA, by no means justifies deferential review.  Plaintiffs' Mem. at 12-13.  Because B&L management was not authorized by SERP I to make those decisions, *de novo* review is required.  *See, e.g., Sharkey*, 70 F.3d at 229.

11

**POINT II**

**THE DECISIONS MUST BE SET ASIDE
WHETHER OR NOT THE DEFERENTIAL
REVIEW STANDARD APPLIES**

An adverse benefit determination is arbitrary and capricious if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Strope v. Unum Provident Corp.*, No. 06-CV-628C, 2010 WL 1257917, at *4 (W.D.N.Y. Mar. 5, 2010) (citations omitted). Here, defendants' interpretation of SERP I's change in control provision and their conclusions regarding the effect of that provision on plaintiffs' after-tax benefits and on their right to continued participation in SERP I are unreasonable and erroneous as a matter of law, and their decisions were arbitrary and capricious. In addition, the complete absence of a full and fair review by the 2008 Committee and the strong evidence that defendants' structural conflict of interest affected their decisions mandate that defendants' decisions to stop paying benefits and terminate SERP I be set aside.

**A.     Defendants' Interpretation of SERP I Is Illogical**

The crux of defendants' argument that the change in control provision applies to plaintiffs is defendants' claim that "Participant" and "Retired Participant" are used "interchangeably" and "without apparent distinction" throughout SERP I. Def. Mem. at 3. In making this argument, defendants ignore the unambiguous definitions of Participant and Retired Participant set forth in SERP I at §§ 2(f) and (h) (Dep. Ex. P-1, Ex. A), and instead claim that if Participant and Retired Participant are not interchangeable, various anomalies would result. Defendants' position makes no sense.

First, defendants argue that unless the term Participant is redefined to include Retired Participants, § 12 would not protect plaintiffs' vested rights to benefits, and "B+L could amend

12

or terminate the plan in a manner that could impair the rights of Retired Participants." Def. Mem. at 18. This argument is ironic because defendants have ignored or rejected arguments that § 12 prevents defendants from construing the amended change in control provision so as to deprive vested Participants of rights under SERP I. Regardless of that, however, defendants' argument is incorrect, because the use of "vested Participant" in § 12 makes perfect sense.

Section 12 discusses the rights of individuals who became vested Participants before SERP I was amended:

> . . . no amendment, suspension, or termination of the Plan shall impair or reduce the rights under the Plan of any person who is a vested Participant herein prior to the date such amendment, suspension, or termination is adopted or becomes effective.

Dep. Ex. P-1, Ex. A. SERP I § 6(c) establishes that at the point that an individual's rights vest, he must be an employee of the Company: "In the event a non-vested Participant's employment terminates prior to his/her vesting, no benefits shall be payable under this Plan or to or on behalf of such non-vested Participant." *Id.* Correspondingly, once a Participant vests, his rights under the Plan are fixed and cannot be reduced or taken away. SERP I § 12, Dep. Ex. P-1, Ex. A. This is true even if his status changes from that of an employee who has vested rights (a "vested Participant") in the Plan to a former employee who is receiving benefits under the Plan (a "Retired Participant").[2] Section 12 is clear as written, and properly applies to plaintiffs, who were Retired Participants at the relevant time, but previously had been vested Participants.

---

[2] ERISA also prohibits application of the change in control amendment to plaintiffs. 29 U.S.C. § 1054(g)(1), ERISA's anti-cutback rule, prohibits plan amendments that have the effect of decreasing a participant's accrued benefits. *Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 744 (2004). Here, plaintiffs' right to after-tax retirement benefits – the rate at which their vested benefits would be paid – had accrued prior to the December 1990 amendment of SERP I. *See id.* at 749 (benefit accrual is the rate at which a participant earns benefits). By adopting a pre-tax discount rate to convert those accrued benefits to lump sums, B&L decreased plaintiffs' accrued benefits. Thus, the amended § 13 cannot be applied to plaintiffs.

13

Likewise, there is nothing in § 9 (discussing funding for vested Participants) that compels defendants' interpretation, based on the definitions set forth in SERP I, that "the Company has no funding obligations to mere Retired Participants." Def. Mem. at 19. As explained in plaintiffs' motion for summary judgment, § 9 required B&L to establish an irrevocable secular trust for each Participant. Plaintiffs' Mem. at 3. This was done for each of the plaintiffs when they were Participants, that is, employees selected to participate in SERP I. Like § 12, § 9 refers to a time when the individuals selected to participate in SERP I were still employees. Once the Participant's trust has been established and the Participant's rights have vested, those rights (including the right to have a secular trust with sufficient assets to pay the required benefits) cannot be impaired in any way. SERP I § 12, Dep. Ex. P-1, Ex. A. Thus, it is not necessary to ignore the definitions of Participant and Retired Participant to give effect to § 9.

Nor, as defendants claim, does § 5(c) create an anomaly that deprives a vested Participant who retires prior to age 55 "from protections that would otherwise flow during the period between termination and age 55." Def. Mem. at 18. Section 5(c) does not address protections afforded any SERP I beneficiary; § 12, read together with §§ 4 and 6, does that, because it protects the rights of such vested Participants. The purpose of § 5(c) is to address when the payment of benefits commences under SERP I, and for how long benefits will be paid. The term Retired Participant in that section properly is used to refer to the time when the Participant has retired, is no longer an employee, and begins to receive benefits under SERP I. *See* SERP I, § 5(c) (describing when "[b]enefits which shall become payable hereunder to or on behalf of Retired Participants" will commence). Dep. Ex. P-1, Ex. A.

Under § 5(c), benefits under SERP I commence "on the first day of the vested Participant's Termination of Employment or death; provided that if at the time of Termination of

14

Employment or death the vested Participant has not reached age 55, benefits shall commence when the former vested Participant becomes 55 . . . ." *Id.* Section 5(c) uses the term Participant only when referring to the moment in time when employment ceases, either by retirement or death. The use of Participant in this context also makes sense because at that point the individual entitled to benefits is still an employee of B&L and has not yet begun to receive benefits.

Despite this clear and logical reading of SERP I, which is consistent with its plain words and definitions as well as its purpose, defendants argue that the definitions should be ignored, and assert that SERP I uses Participant and Retired Participant "interchangeably" and "without apparent distinction." Def. Mem. at 3. This produces strained and illogical results. For example, § 6(a) provides that "[i]n the event a vested Participant is either terminated by the Company or terminates his/her employment with the Company on or after age 55, such vested Participant shall be entitled to receive a benefit determined and payable pursuant to Section 5 hereof." Dep. Ex. P-1, Ex. A.

Substituting Retired Participant for Participant in § 6(a) would make no sense because someone who is no longer an employee of the Company cannot have his employment terminated by the Company; the Retired Participant's employment already terminated long ago. Substituting the definition of Retired Participant for Participant in § 6(c) would likewise be nonsensical because someone who already is receiving benefits under SERP I would be prohibited from receiving benefits. Plaintiffs previously explained that it makes no sense to substitute Retired Participant for Participant, or to include Retired Participant with Participant in § 13, since that section provides that the date of the change in control is deemed to be the date of Termination of Employment. That can only apply to Participants, who are current employees

15

and do not otherwise have a termination date.  Retired Participants already have a termination date.  Plaintiffs' Mem. at 14-15.

SERP I, like any contract, must be construed in accordance with its plain meaning, its defined terms and its purpose, and with deference to the objective intention of the plan sponsor as expressed in the words it chose in drafting the document.  *See Sullivan v. LTV Aerospace and Defense Co.*, No. 91-CV-7138, 1993 WL 405495, at *5-6 (W.D.N.Y. Sept. 30, 1993).  An ERISA plan should not be construed in a way that renders terms superfluous.  *Id.* at *6; *O'Shea v. First Manhattan Co. Thrift Plan & Trust*, 55 F.3d 109, 112 (2d Cir. 1995).  Giving each term meaning, applying the definitions established by the Plan, and considering the purpose of SERP I (to provide guaranteed after-tax retirement benefits to certain highly valued executives) and the purpose of the change in control provision (to insulate current employees from adverse consequences as a result of a change in control so as to promote their independent judgment for their employer's best interests), SERP I is clear, consistent, and logical.  By contrast, defendants' interpretation is illogical, and does not fit with the plain words of SERP I or its purpose.  That interpretation is arbitrary and capricious, and must be rejected.

**B.    Defendants' Undisputed Conflict of Interest Affected their Decisions as to SERP I**

Defendants acknowledge that a structural conflict of interest exists, whether or not they call it an "alleged conflict."  Def. Mem. at 13-14.  They accept that B&L had an inherent conflict through the reversion right to millions of dollars, but argue that the conflict "was not a factor in the Committee's denial of Plaintiffs' claim for benefits."  *Id.* at 13.

The conflict is obvious, and has to be acknowledged.  The Supreme Court in *Metropolitan Life Ins. Co. v. Glenn* held that a structural conflict exists whenever the individual or entity making the decision also funds the plan because "every dollar saved . . . is a dollar in

the [decision-maker's] pocket." 554 U.S. 105, 112 (2008); *see also* Plaintiffs' Mem. at 23. Under the terms of the Plan and its secular trusts, B&L remained obligated to ensure that the trusts were adequately funded. SERP I, § 9, Ex. A ("notwithstanding the establishment of the trust, the Company remains ultimately responsible to pay promised benefits to each vested Participant"); § 13 ("The Plan and its associated trust shall continue in effect and survive any Change of Control and any successor to the Company shall assume the obligations of the Company under the Plan."). This obligation continued for the duration of plaintiffs' lives and the lives of their surviving spouses. *Id.* § 5(c).

Under defendants' interpretation of the change in control provision, however, plaintiffs had no further rights under SERP I once the lump sum payments were made. Dep. Exs. P-65, P-66, P-67, Ex. M. That interpretation benefitted B&L because it stood to gain access to the excess funds in the SERP I trusts (more than $7.3 million, less expenses). Dep. Ex P-76, Ex. Q. The SERP I trusts provided for that reversion. Dep. Ex. P-2, § 7.2, Ex. H. Further, by terminating the rights of the sole beneficiaries of SERP I, B&L could eliminate its ongoing obligations to ensure that the trusts remained adequately funded and to pay future benefits under SERP I. Dep. Ex. P-2, Ex. H, § 7.2. The 2008 Committee members also stood to gain directly from rejecting plaintiffs' challenges to B&L's interpretation, since each of them – as a general partner in either Warburg or Welsh Carson, the private equity firms that bought B&L – was not only a director of B&L but also an owner, directly or indirectly. Mackesy dep. 5:2-5:23; Carney dep. 5:11-16, 8:5-17, 28:12-31:12; Weatherman dep. 5:21-25, 7:19-25, Ex. Y.

Defendants' contention that this conflict "is immaterial to the Court's deferential review of the Committee's decision because Plaintiffs' extensive discovery efforts yielded no evidence that the potential for reversion of assets actually influenced the challenged decision" (Def. Mem.

at 14) is incorrect, and any self-serving testimony that B&L employees were unaware of the conflict or not influenced by it is irrelevant.

Plaintiffs are not required to produce evidence that the conflict "actually influenced" the decision. *Glenn* and subsequent Second Circuit cases make clear that the Court should look at the circumstances surrounding the decision to ascertain the "likelihood that [the conflict] affected the benefits determination." The reason is obvious: "'smoking gun' direct evidence of purposeful bias is rare . . ." in ERISA cases. *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 379 (3d Cir. 2000), *overruled on other grounds*, *Howley v. Mellon Financial Corp.*, 625 F.3d 788 (3d Cir. 2010); *accord*, *Trussel v. Cigna Life Ins. Co. of New York*, 552 F. Supp. 2d 387, 390 (S.D.N.Y. 2008).

Thus, where the circumstances suggest a "higher likelihood that it affected the benefits decision," the Court should give the conflict greater weight and the decision closer scrutiny. *Glenn*, 554 U.S. at 117; *accord, Durakovic v. Building Serv. 32 BJ Pension Fund*, 609 F.3d 133, 138-39 (2d Cir. 2010). *Marrs v. Motorola, Inc.*, 577 F.3d 783 (7th Cir. 2009), cited by defendants, is not to the contrary. *Marrs* does not require plaintiffs to prove that the conflict "decisively influenced" defendants' decision-making, as defendants suggest. Def. Memo at 13; 577 F.3d at 789. Instead, *Marrs* confirms that the Court must look to the surrounding circumstances to determine the likelihood that the conflict influenced the decision. *Id.* ("[t]he *likelihood* that the conflict of interest influenced the decision is therefore the decisive consideration . . .") (emphasis in original). To the extent *Marrs* can be read as rejecting this sliding scale approach, it is contrary to both the Supreme Court's decision in *Glenn* and to the Second Circuit's holding in *Durakovic* that "[t]he weight properly according a *Glenn* conflict

18

varies in direct proportion to the 'likelihood that [the conflict] affected the benefits decision." 609 F.3d at 139.

Notwithstanding the self-serving testimony of B&L management and the 2008 Committee members, the circumstances demonstrate that it is highly likely the conflict played a significant role in defendants' interpretation of SERP I and termination of plaintiffs' rights. Despite the clear opinions of two independent benefit consultants, Mercer and Westport Strategies, that the SERP I change of control provision did not apply to plaintiffs (Dep. Exs. P-21 and P-41, Exs. J and K), B&L benefits analyst Reigle wrote Westport Strategies that "[i]n the end, everyone [at B&L] would like to see these SERP plans [including SERP I] go away." Dep. Ex. P-56, Ex. L.

B&L did everything it could to make SERP I "go away." The September 2007 letters to each plaintiff, who had been retired and receiving SERP I monthly benefit payments for years, told them with virtually no prior warning that they would receive lump sum payments and that "after this payout, your participation in SERP I will cease, and you will receive no further benefit under the Plan" (Dep. Exs. P-65, P-66, and P-67, Ex. M), but failed to identify the SERP I provisions on which B&L relied in support of their decision, or to advise plaintiffs of their right to challenge it. As a matter of law, these failures violated ERISA's notice requirements. *See* 29 C.F.R. § 2560.503-1(g) (requiring notice of the specific plan provisions on which an adverse benefit determination is based, as well as a description of the plan's review procedures).

The 2008 Committee likewise violated ERISA regulations mandating that a beneficiary be given a full and fair opportunity to challenge an adverse benefit determination when they declined to direct B&L to provide the documents plaintiffs repeatedly had requested, as discussed above at 8-10. When the 2008 Committee, through Ropes & Gray, did request that

19

B&L produce the documents, it did nothing to enforce that requirement. Thus, neither the 2008 Committee nor plaintiffs knew that two consultants had advised B&L, before its decision was made, that the change of control provision was not triggered by the Warburg acquisition, or that Reigle had stated that B&L wanted to terminate SERP I anyway.

Further, the 2008 Committee's failure to determine the basis for the decision in September 2007 to pay the lump sum amounts and terminate SERP I benefits for plaintiffs, failure to review documents from that period or interview the personnel who were involved, such as Reigle, Zaucha, Rivera, or Nachbar, complete delegation of their decision-making to their law firm, and failure to sign a decision, revise a proposed draft, keep evidence of what they considered, or even to meet in person (Plaintiffs' Fact Statement ¶¶ 29-31) suggest a callous disregard for their fiduciary duties and for plaintiffs' rights under SERP I that epitomizes the phrase "arbitrary and capricious." The only evidence showing the 2008 Committee's actual work as to the claims is Carney's cavalier email, in response to plaintiffs' request to submit additional information during the administrative review process, expressing his view that "we [the Committee] should just deny there [*sic*] claim and get on with it." Dep. Ex P-93, Ex. W.

There is no benign explanation for defendants' actions. Their behavior, and the failure to comply with ERISA's requirements for full and fair review of adverse benefit decisions, is evidence that defendants' conflict of interest likely affected their decision-making. *See, e.g., Prado,* 800 F. Supp. 2d at 1095 (plan administrator's tactics, including "marked hostility" to sharing information with claimants, created an "impression that the individuals handling and evaluating [p]laintiff's claim . . . were less interested in offering a neutral and fair evaluation of [p]laintiff's claim than they were in erecting procedural roadblocks" and was evidence that conflict of interest likely affected decision to deny benefits); *accord Durakovic,* 609 F.3d at 140

20

(administrator's deceptive or unreasonable conduct is evidence that a conflict likely affected decision-making); *McIntyre v. Aetna Life Ins. Co.*, 581 F. Supp. 2d 749, 756 (W.D. Va. 2008) (whether administrator's decision was "consistent with the procedural and substantive requirements of ERISA" and "whether the decision-making process was reasoned and principled" bear on whether decision was an abuse of discretion).

Numerous other undisputed facts demonstrate that it is likely defendants' conflict affected their decision-making. For example, B&L, through its "outside benefits lawyer," Proskauer (Dep. Ex. 102, Ex. R), actively advocated against plaintiffs before the 2008 Committee, submitting multiple, lengthy advocacy pieces in favor of defeating any challenge to B&L's decision to issue the lump sum payments and terminate plaintiffs' rights under SERP I. *See* Shapiro letters of January 7 (BL-AR 000010-21) (AR Part 1, Docket No. 55-6 at 11-22 of 87), February 15 (BL-AR 000089-90) (AR 4-5 of 72), July 29 (BL-AR 000142)(AR 57 of 72), August 8 (BL-AR 000149-50, AR 64-65 of 72), September 19 (BL-AR 000383-89)(AR Part 6, at 6-12 of 71), and November 6, 2008 (BL-AR 000507-08)(AR Part 7, Docket No. 55-12 at 60-61 of 64).

The 2008 Committee permitted and considered these submissions, despite the fact that the claims procedures it published in February 2008 did not provide for B&L's participation in the administrative review process (Dep. Ex. P-83, Ex. U), and despite its fiduciary obligation to discharge its duties solely in the interest of SERP I's participants and beneficiaries. *See* 29 U.S.C. § 1104(a)(1). Indeed, the February 2008 claims procedures do not even provide a mechanism for challenging an adverse benefit determination initiated by B&L.[3]

---

[3] The procedures only provide for review of a "Claim," which is defined solely as a "request, demand or other claim for a Benefit brought by a Claimant or a Claimant's Representative." SERP I Section 503 Procedures § 1, Dep. Ex. P-83, Ex. U. Thus, the

B&L's failure to provide procedures for review of an adverse benefit determination in this case confirms that the September 2007 decision by B&L was intended to be final, without any review by the Committee on Management, and that such review was not contemplated. These review procedures were first drafted after the fact. Only after plaintiffs challenged the September 2007 decision did B&L assign a review responsibility to the 2008 Committee. Nov. 21, 2007 B&L Board of Directors minutes, Ex. 5 to defendants' motion, Docket No. 55-14; Zorn letter of April 14, 2008, Ex. V. This may explain why B&L has striven mightily to avoid admitting that B&L management's decision to issue the lump sum payments and terminate plaintiffs' participation in SERP I was an adverse benefit determination, and instead insisted that plaintiffs were asserting a "claim for additional benefits." Shapiro letter of January 7, 2008, BL-AR 000010-21, AR Part 1, Docket No. 55-6 at 11-22 of 87; Def. Mem. at 6 ("submitting a formal claim for benefits"). It also suggests that defendants never really intended to review plaintiffs' objections in good faith and in conformity with their fiduciary obligations.

In short, it appears that the 2008 Committee, through its counsel, simply adopted the position advocated by B&L management in denying plaintiffs' challenge to the adverse benefit determination. Zorn letters of April 14, 2008, Ex. V, and December 11, 2008, Ex X. These undisputed facts suggest that the 2008 Committee's review was not an unbiased review by a fiduciary of the termination of the rights of the SERP I beneficiaries, and was fatally tainted by the structural conflict of interest. *See, e.g., Schultz v. Stoner,* No. 00 Civ. 0439, 2009 WL 455163, at *11 (S.D.N.Y. Feb. 24, 2009) (employer's "strongly argumentative submission in

---

procedures do not provide a mechanism for review of an adverse benefit determination made, in the first instance, by B&L, in violation of ERISA. *See* 29 C.F.R. § 2560.503-1(b), (m)(4) (requiring plans to establish claims procedures for appeal of "adverse benefit determinations," which include any "reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit . . . .").

opposition to the benefit claim suggest[s] that the claims determination structure employed . . . was one designed to favor the company's perspective rather than that of those claiming rights as plan participants or beneficiaries").

Defendants' inherently inconsistent interpretation of the change in control provision is yet further evidence that the conflict likely affected their decision-making. *See, e.g., Glenn,* 554 U.S. at 118 (suggesting that a conflict should be given more weight where fiduciary "[takes] 'seemingly inconsistent positions [that are] both financially advantageous.'"). This is demonstrated by the 2008 Committee's conclusion that the portion of SERP I § 13 that requires the payment of a reduced lump sum applied to plaintiffs, even though they were Retired Participants, while also concluding that the portion of § 13 that states that the "Plan and its associated trusts shall continue in effect and survive any Change of Control" and that "any successor to the Company shall assume the obligations of the Company under the Plan" applies only to current employees (*i.e.,* Participants), despite the absence of any language that supports such a conclusion. Dep. Ex. 1, Ex. A. *See* Zorn letter of April 14, 2008, Ex. V. The 2008 Committee's internally contradictory interpretation of § 13 was critical to effectuate B&L's goal of making the SERP I plan "go away." Dep. Ex. P-56, Ex. L.

Perhaps the most telling evidence of how the conflict affected defendants' decisions is their steadfast failure, during both the administrative review process and this action, to consider and address plaintiffs' argument that even if defendants' interpretation of the change in control provision is correct, § 12 prohibits it from operating to reduce plaintiffs' benefits or terminate their rights under SERP I. Prior to its amendment in December 1990, SERP I contained a very simple change in control provision, with no provision for lump sum distributions. SERP I as restated Dec. 15, 1987, Ex. B; Plaintiffs' Fact Statement ¶ 32. Defendants admit that all three

plaintiffs' rights in the plan were vested as of the amendment to the change in control provision. Plaintiffs' Fact Statement ¶ 3.  Further, under defendants' interpretation of SERP I, the amended change in control provision at § 13 would operate to reduce plaintiffs' accrued and vested benefits under the Plan.  Plaintiffs' Fact Statement ¶¶ 14, 18-20.  Thus, as set forth in § 12, defendants' interpretation of the actuarial benefit language in § 13 simply cannot be applied to plaintiffs because it deprives them of vested rights in violation of § 12.  *See* Plaintiffs' Mem. at 18-20.  Defendants have never addressed or acknowledged this issue despite the fact that plaintiffs raised it repeatedly during the administrative review process.  *See* Kurland letter of January 15, 2008 at 3-4, BL-AR 000079-84, AR Part I, Docket No. 55-6, at 80-85 of 87.

Each of these facts on its own is strong evidence of the likely effect defendants' conflict had on their decision-making; taken together, they are insurmountable.  *See Schultz*, 2009 WL 455163, at *13 ("fundamental legal and factual flaws in the Review Panel's analysis, standing alone and considered together with the structural conflict . . . and the skewed nature" of employer's actions, rendered decisions arbitrary and capricious).  As fiduciaries, defendants have a duty of loyalty to the SERP I beneficiaries.  *See* 29 U.S.C. § 1104(a)(1) (plan fiduciaries are obligated to act "solely in the interests of the participants and beneficiaries . . . and for the exclusive purpose of providing benefits to participants and their beneficiaries; . . . and defraying reasonable expenses of administering the plan").  SERP I has unique features that ensure no other beneficiary – current or future – can be harmed by a decision that favors any particular beneficiary.  This is because SERP I requires that the funds necessary to meet B&L's obligations to each beneficiary be placed in a separate secular trust solely for the benefit of that beneficiary.

Defendants are not faced with the choice of paying SERP I assets to one beneficiary at the potential expense of another.  The only adverse impact of a decision that favors a particular

beneficiary is on B&L, which might be required to deposit additional funds into a trust to pay the required benefits.  *See* Ex A, § 9 ("[t]he Company shall make periodic contributions to this trust as may be required to fund the required benefits on an actuarially sound basis").  Under these circumstances, there is no justifiable reason for defendants to ignore the plain language of SERP I in favor of an interpretation that deprives beneficiaries of vested benefits and enriches B&L and its owners.  Defendants' undisputed, structural conflict of interest almost certainly had a major impact and, accordingly, the Court should give the conflict great weight when considering whether defendants' decision was arbitrary and capricious.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in plaintiffs' motion for summary judgment, incorporated herein by reference, defendants' motion for summary judgment in their favor should be denied.

Dated:  May 18, 2012

Respectfully submitted,

            s/Harold A. Kurland
Harold A. Kurland (hkurland@wardgreenberg.com)
Heidi S. Martinez (hmartinez@wardgreenberg.com)
Taren N. Greenidge (tgreenidge@wardgreenberg.com)
*Attorneys for Plaintiffs*
WARD GREENBERG HELLER & REIDY LLP
300 State Street
Rochester, New York 14614
(585) 454-0700