UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DANIEL E. GILL, THOMAS C.
McDERMOTT, and JAY T. HOLMES,

               Plaintiffs,

      -vs-

BAUSCH & LOMB SUPPLEMENTAL
RETIREMENT INCOME PLAN I, BAUSCH &
LOMB INCORPORATED, and COMPENSATION
COMMITTEE OF THE BAUSCH & LOMB
BOARD OF DIRECTORS,

               Defendants.

**DECISION AND ORDER**
**No. 6:09-CV-6043(MAT)**

---

## I.   Introduction

This action arises under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA"). Daniel E. Gill, Thomas C. McDermott, and Jay T. Holmes (collectively, "Plaintiffs"), following the affirmance on appeal of this Court's grant of summary judgment in their favor, have filed a motion for attorney's fees and related expenses (Dkt #86).

## II.  Procedural Status

On January 29, 2009, Plaintiffs filed suit in this Court pursuant to Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), alleging that Defendants wrongfully terminated their monthly SERP I benefit payments pursuant to SERP I's change-in-control provision, by distributing lump-sum payments to Plaintiffs. On March 3, 2014, this Court granted Plaintiffs' motion for summary judgment and denied Defendants' motion for summary

judgment. The Court held that in calculating Plaintiffs' damages, Defendants were entitled to a credit for the lump-sum payments already paid to Plaintiffs. The Court dismissed without prejudice Plaintiffs' previously filed motion for attorneys' fees pending the disposition of any appeal.

Defendants timely appealed to the United States Court of Appeals for the Second Circuit, which affirmed the Court's judgment. The Second Circuit construed this Court's remedy as "order[ing] reinstatement of Bausch & Lomb's monthly benefit obligation, while allowing for a one-time 'credit' in the amount of the (unlawful) lump-sum that Bausch & Lomb already paid." Summary Order  at 4-5 (Dkt. #84). On January 7, 2015, Plaintiffs again moved reimbursement of attorney's fees and related expenses in the total amount of $730,106.30. Bausch & Lomb Supplemental Retirement Income Plan I ("SERP I" or "the Plan"), Bausch & Lomb Incorporated ("B&L"), and the Compensation Committee of the Bausch & Lomb Board of Directors (collectively, "Defendants") have partially opposed the motion (Dkt #88). Defendants do not challenge whether Plaintiffs are entitled to an award of attorney's fees under ERISA, or the reasonableness of the amounts requested. Rather, Defendants oppose Plaintiffs' motion only with respect to their request to have this Court (1) require Defendant B&L to pay any award for attorney's fees and expenses out of its own assets rather than from the assets of SERP I; and (2) preclude Defendants from using assets

held by SERP I to pay the attorney's fee award, or to hold back the attorney's fees against the balance of Plaintiffs' lump-sum payments.

The motion is now fully submitted. For the reasons discussed below, Plaintiffs' motion is granted in its entirety.

## III. Discussion

ERISA gives courts the discretion to award reasonable attorney's fees. See 29 U.S.C. § 1132(g)(1)("In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."). As noted above, Defendants do not dispute Plaintiffs' entitlement to a reasonable attorney's fee. The sole dispute here is who should be responsible for payment of this fee.

### B.   SERP I, § 9

In support of their argument that B&L is the appropriate entity to pay the attorney's fee, Plaintiffs rely on Section 9 of SERP I, which provides in part that

> [t]he Company [B&L] shall establish an irrevocable secular trust for each Participant for the purpose of holding assets used to provide the vested benefits required by this Plan. The assets of the secular trust shall at no time be available to creditors of the Company, even in the event of the Company's bankruptcy or insolvency. . . .

SERP I, § 9 (Dkt # 56-4, p. 11). Plaintiffs argue that Section 9's plain language "prohibits trust assets from being used to satisfy

any debts owed to creditors [of B&L], including debts owed to [P]laintiffs upon an award of attorney's fees. . . ." Plaintiff's Memorandum ("Pls' Mem.") at 13 (Dkt #86-4). Defendants argue that if this Court were to order that the attorney's fees be paid with Plan assets, then Plaintiffs would be "creditors" of SERP I, not of B&L. Dkt #88, p. 8. However, as discussed further below, B&L properly was named as a defendant in this action, and Plaintiffs obtained a judgment against B&L and SERP I. Therefore, Plaintiffs are creditors of both SERP I *and* B&L. Although Section 9 of SERP I provides some support for Plaintiffs' argument, the Court does not find it dispositive.

### B.    ERISA's Anti-Inurement Provision

Plaintiffs also rely on ERISA's "anti-inurement" provision which, with exceptions not here material, states that

> the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

29 U.S.C. § 1103(c)(1). Plaintiffs assert that awarding attorney's fees to plan sponsor from ERISA plan funds conflicts with ERISA's anti-inurement provision. See Plaintiffs' Memorandum of Law ("Pls' Mem.") at 13 (citing Alvan Motor Freight, Inc. v. Trustees of the Cent. States, Se. and Sw. Areas Pension Fund, Nos. 4:05 CV 125, 1:06 CV 809, 2008 WL 2004307, at *6-*7, (W.D. Mich. May 7, 2008) ("Alvan"); Johannssen v. District No. 1, No. AMD 96-2355, 2001 WL

770987, at *1 (D. Md. July 10, 2001).  These cases do not stand for the proposition urged by Plaintiffs, however.

For instance, Alvan was a delinquent contributions case in which the plan sponsor was the prevailing party and sought attorney's fees pursuant to both 29 U.S.C. § 1132(g)(1) and the parties' collective bargaining agreement.  The district court declined to award fees under Section 1132(g)(1), finding that the applicable factors did not weigh in the plan sponsor's favor. See 2008 WL 2004307, at *5-*6. The district court went on to consider whether the parties' collective bargaining agreement permitted the award of attorney's fees, and "note[d] that holding the [plan] liable for [the plan sponsor]'s attorney fees *could* conflict with the [collective bargaining agreement] and, more importantly, ERISA." Alvan, 2008 WL 2004307, at *7 (citing 29 U.S.C. § 1103(c)(1); emphasis supplied). The district court found that "[t]hese efforts [in ERISA and the collective bargaining agreement] to protect trusts from being used for any purpose other than to benefit beneficiaries [we]re not dispositive, but [we]re persuasive to an application of the [collective bargaining agreement]." Id. (citing Whitworth Bros. Storage Co. v. Central States, Se. and Sw. Area Pension Fund, 982 F.2d 1006, 1019 (6th Cir. 1993) (holding "the anti-inurement policy of ERISA bars an award of interest on any amount that is refunded"); Airco Indus. Gases, Inc. Div. of the BOC Group, Inc. v. Teamsters Health and Welfare Pension

Fund of Philadelphia and Vicinity, 850 F.2d 1028, 1037 (3d Cir. 1988) (agreeing "that the anti-inurement policy of ERISA bars an award of interest on any refund, regardless of the fund's financial stability")). Alvan simply did not hold that requiring an ERISA plan to pay the plan sponsor's attorney fees *could* conflict with ERISA's anti-inurement provision. Alvan, 2008 WL 2004307, at *7. Furthermore, the main dispute in Alvan was not the source from which the attorney's fee would be paid, but whether the plan sponsor, as prevailing party, should be awarded attorney's fees at all. Plaintiffs' mischaracterization of Alvan aside, the Court finds that ERISA's anti-inurement provision is relevant to the question presented here and that Alvan does provide support for Plaintiffs' position.

Turning to the cases cited by Defendants, the Court finds that they likewise do not strongly support the proposition Defendants urge, namely, that it is improper for B&L, the employer and plan sponsor, who also is a named defendant against which a judgment has been obtained, to be required to pay Plaintiffs' attorney's fees directly. For instance, Defendants cite Bio-Medical Applications of Ky., Inc. v. Coal Exclusive Co., Civil No. 08-80-ART, 2011 WL 3568249, at *4 (E.D. Ky. Aug. 15, 2011) ("Bio-Med"), for the proposition that "despite any potential 'conflict,' courts have awarded payment of attorneys' fees from plan assets. . . ." Defendants' Memorandum of Law ("Defs' Mem.") at 5 (Dkt #88).

<u>Bio-Med</u> did not mention the word "conflict"; nor did it address ERISA's anti-inurement provision. <u>Bio-Med</u> principally involved an analysis of whether an attorney's fee award against the defendant insurance company was warranted. The defendant in <u>Bio-Med</u> argued that the "ability to pay" factor cut in its favor, asserting it had no assets independent of the employers' contributions to the plan, and that an award of attorney's fees would significantly decrease the plan assets available to pay other participants' benefits and costs. <u>See</u> 2011 WL 3568249, at *4. Noting that the exact financial impact of such an award the defendant was unclear, the district court declined to weigh the "ability to pay" factor in either party's favor. <u>Id.</u>; <u>see also</u> <u>id.</u> at *7 (stating that even if the defendant's ability to satisfy an award would have an impact on plan assets, the other relevant factors for granting attorney's fees weighed in the plaintiff's favor). The case provides some, but not conclusive, support for Defendants' position.

## C.   ERISA's Anti-Alienation Provision

ERISA contains an "anti-alienation" or "spendthrift" clause which states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1);  <u>see also</u> <u>Boggs v. Boggs</u>, 89 F.3d 1169, (5th Cir. 1996) ("ERISA's spendthrift provision unequivocally and unconditionally commands that "'benefits provided under the plan may not be assigned or alienated.'") (quotation and footnote

omitted). Although neither Plaintiffs nor Defendants referenced the anti-alienation provision in their papers, it is relevant to the present matter.

In AT&T Mgmt. Pension Plan v. Tucker, 902 F. Supp. 1168 (C.D. Cal. 1995) ("Tucker"), fiduciaries of an ERISA pension plan sought injunctive and declaratory relief to restrain a state family court from enforcing orders that the fiduciaries pay, out of plan funds, attorney's fees incurred by the defendants (plan beneficiaries) during a dispute over the plan. Tucker, 902 F. Supp. at 1170. The defendants sought to enforce the attorney's fee award. Id. at 1171. Without analysis, the district court agreed with the plaintiffs that the state court's orders were not qualified domestic relations orders,[1] and they accordingly constituted a prohibited assignment or alienation of moneys held by the plan and its trust to provide pension benefits to its participants and beneficiaries, including the defendants. Id. at 1176. The Court recognizes that Tucker is not binding authority and is not entirely apposite here. However, its application of the anti-alienation provision supplies additional perspective on the parties' arguments and supports Plaintiffs' position.

---

[1]

ERISA's anti-alienation provision is not applicable to a qualified domestic relations order.  See Ablamis v. Roper, 937 F.2d 1450, 1454 (9th Cir. 1991) (noting that Congress passed the Retirement Equity Act of 1984 to amend ERISA so as to create "an express statutory exception to the prohibition on assignment and alienation in the case of distributions made pursuant to . . . a 'qualified domestic relations order. . . .'") (quotation omitted).

### D.    Propriety of Requiring B&L to Pay Fee Award

As Plaintiffs note, Defendants have cited no authority that it is improper for B&L itself be required to pay an attorney's fee award under the present circumstances. B&L properly was named as a defendant, this Court granted summary judgment against all defendants, including B&L; and judgment was entered against all defendants, including B&L. Subsequently, that judgment was affirmed by the Second Circuit, issued as a mandate, and made a judgment of this Court.

The Court agrees with Plaintiffs that it was appropriate to name B&L as a defendant because SERP I does not specifically name any "plan administrator". See  29 U.S.C. § 1002(16)(A)(ii). Indeed, B&L filed reports with the United States Department of Labor ("DOL") identifying itself as plan administrator and filed Forms 5500 with the DOL designating itself as Plan Administrator. See Plaintiffs' Reply ("Reply") at 3 (citations to record omitted).[2]

---

[2]

As Plaintiffs argue, Crocco v. Xerox Corp., 137 F.3d 105 (2d Cir. 1998), fails to support Defendants' argument that B&L should not be liable for the attorney's fee award. The issue in Crocco was whether the plaintiff-beneficiary could maintain suit against the defendant-employer, Xerox, in addition to her suit naming the plan administrator as a defendant. The Second Circuit held that because it was clear from the plan documents that Xerox was neither the designated plan administrator nor a plan trustee, and because it could not be a de facto co-administrator for purposes of ERISA § 502(a)(1), it could not be held liable for benefits due to the plaintiff under the plan. See Crocco, 137 F.3d at 107-08 & n. 3. In contrast to Crocco, here the Plan did not specifically name a plan administrator.

**E.    SERP I Trusts' Ability to Pay**

Defendants argue that payment of an attorney's fee award out of the SERP I trusts would not prejudice Plaintiffs because Defendants are financially able to pay the award out of the trusts, which Defendants state are presently overfunded. See Defs' Mem. at 5-6 (citations omitted).[3] Even if that is the case, the fact remains that the SERP I trusts indisputably are for the sole benefit of Plaintiffs. The Court cannot help but note some degree of inequity in Defendants' request to extract the penalty imposed against them, as losing parties, from the monies held in trust to benefit the winning parties. Unlike Defendants, the Court has difficulty characterizing the attorney's fees and expenses sought by Plaintiffs as "reasonable expenses" of administering SERP I. Clearly, the fees and expenses were not directly incurred by the SERP I plan trustee. Nor were the monies expended in the provision of services to the trusts or Plaintiffs as beneficiaries. Rather, they were incurred by Plaintiffs in seeking redress of Defendants' ERISA violations.

After carefully weighing the equities in this case, the Court concludes that B&L should be liable for paying the full amount of an award of attorney's fees and expenses. Defendants do not dispute the reasonableness of the amount claimed by Plaintiffs (i.e.,

---

[3]

Notably, Defendants have not argued that B&L *lacks* the ability to pay an attorney's fee award.

attorney's fees of $665,329.08; expenses of $25,327.22; and expert fees of $39,450.00, for a total amount of $730,106.30). The Court finds that the full amount of the award of attorney's fees and expenses should be paid directly and entirely by B&L.

## IV.   Conclusion

For the foregoing reasons, Plaintiffs' motion for attorney's fees and related expenses is granted in its entirety. The Court orders that no portion of the ultimate award of attorney's fees and expenses shall be paid with assets held by SERP I. Defendant B&L shall be required to pay the full amount requested to date of $730,106.30, which represents the fees and expenses incurred up to the filing of Plaintiffs' motion.

The Court grants Plaintiffs' request to submit a supplemental affidavit as to the calculation of interest and additional attorney's fees and related expenses incurred after the filing of the motion. Plaintiffs' supplemental affidavit is due fourteen (14) days from the date of entry of this Decision and Order.

**IT IS SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    April 13, 2015
          Rochester, New York

-11-